228 So.2d 76 (1969)
Joyce Elaine REYNOLDS et al., Plaintiff-Appellant,
v.
HARTFORD ACCIDENT & INDEMNITY COMPANY et al., Defendant-Appellee.
No. 11189.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1969.
On Rehearing September 22, 1969.
Rehearing Denied October 20, 1969.
Writ Refused January 9, 1970.
*77 Hendrick, Fant, Sexton & Bain, by Fred C. Sexton, Jr., Shreveport, for plaintiff-appellant.
Cook, Clark, Egan, Yancey & King, by Benjamin C. King, Shreveport, for American Service, defendant-appellant.
Mayer & Smith, by Paul Mayer, Shreveport, for Hartford, defendant-appellee.
Irving M. Greenberg, Shreveport, for Cooper, defendant and plaintiff in reconvention appellee.
Before GLADNEY, DIXON and PRICE, JJ.
*78 DIXON, Judge.
This case arises from a head-on collision on the Old Benton Road near the intersection of Hamilton Lane in Bossier City, about 1:15 p. m. April 7, 1966. One car was operated by Mrs. Joyce Elaine Reynolds, headed toward Benton, with her two young children as passengers; the other car was driven by Robert D. Cooper, headed toward Shreveport, with Mrs. Laura D. Simmons as a passenger.
The suit before us was filed by Mrs. Reynolds and her husband to recover damages as a result of injuries suffered by Mrs. Reynolds. It was consolidated with another case for trial. That case sought damages as a result of injuries to the minor children of Mr. and Mrs. Reynolds, and is not before us. Another suit was filed by a passenger in Mr. Cooper's automobile, but was dismissed before the instant case was tried.
Defendants in the case before us were Robert D. Cooper and the Hartford Accident & Indemnity Company, alleged to be his liability insurer.
Cooper filed a third party petition and a reconventional demand, seeking damages against the Reynoldses and the American Service Mutual Insurance Company, their insurer. Issue was joined between Hartford and Cooper, Hartford claiming that the liability insurance policy it had issued to Cooper had been duly canceled prior to the accident for nonpayment of premiums. There was judgment in favor of Hartford and against Cooper. To this portion of the judgment, the parties seem to have acquiesced. No issue has been made in brief or argument concerning this portion of the case.
The trial court found in favor of Robert D. Cooper, granting him judgment against the Reynoldses and American Service Mutual Insurance Company in the sum of $2,341.20. The third party defendants appealed, and Cooper answered the appeal, seeking an increase in the amount of the judgment.
The trial court evidently found that the accident was caused by the negligence of Mrs. Reynolds. A police officer located the vehicles near the middle of the street, but more in Cooper's lane, after the accident and fixed the point of impact from debris in the street "right in the middle of the street." Pictures of the automobiles indicate that they collided, left headlight to left headlight.
The street on which the accident happened is a concrete street with rollover curbs, forming an S-curve south and west of its intersection with Hamilton Road. The street has no center line painted on it, but is built with an expansion joint between the concrete slabs, marking the center of the street. There are no buildings located within the S-curve and no parking lane provided. The two lanes of travel are adequately wide to accommodate vehicles traveling at a moderate rate of speed.
There were three witnesses, in addition to the parties to the case, who testified that they saw the accident: Mrs. Sandra Brown, Samuel Lombardino, and Danny E. Womack.
Mrs. Brown was driving a Volkswagen behind Mrs. Reynolds' Chevrolet prior to the accident. She said that Mrs. Reynolds was across the center line when the accident happened.
Mr. Lombardino was seated in a pickup truck stopped at the "Stop" sign on Hamilton Lane, preparing to enter or cross the Old Benton Road. Hamilton Lane crosses the railroad spur track at this point, and is elevated above the Benton Road. He testified that the Cooper automobile was across the center line at the time of the accident.
Mr. Womack resides on Hamilton Lane, and his house faces the situs of the accident. He had just pulled up the blind in his bedroom window and was looking out the window when he saw the accident happen. He said Cooper's car was on the wrong side of the street and collided with Mrs. Reynolds' car.
*79 The most striking portion of the testimony of the witnesses was that of the drivers of the two automobiles. Neither saw the other approaching vehicle until the cars were very close together. Mrs. Reynolds said that she saw the Cooper car when she was about 20 feet from it. Mr. Cooper said that he saw the Reynolds car when he was about 20 to 25 feet from it. There is no question of misapplication of the unit of measurement by these parties, since they pointed out people in the courtroom that approximated those distances.
This failure on the part of each motorist to observe the proximity of the other necessitates a careful examination of the testimony to determine fault in the accident.
No one testified that either car occupied very much of the opposing lane of traffic. Mrs. Brown placed the front of the Reynolds automobile substantially in Mr. Cooper's lane, but her description of the path followed by the Reynolds car is difficult to understand. She said that she was about three car-lengths behind Mrs. Reynolds, and after they passed an oil company and a lumber company the Reynolds car "started in the other lane of traffic," and from that point was driven partially in the wrong lane of traffic until the collision. However, Mrs. Brown stated more than once that the car was traveling in a "diagonal position with the center of the road." On cross-examination she further specified that she meant that the left rear wheel was at the approximate center of the road, but that the left front wheel was about three feet in the other traffic lane. A fair reading of Mrs. Brown's testimony leads to the conclusion that she was saying that the Reynolds car was traveling down the road with its left front across the center line and its left rear almost completely on its own side of the road. Mrs. Brown's observation of this oblique angle of travel diminishes the confidence that may be placed in her testimony about the cause of the accident.
Mr. Lombardino was in an excellent position to observe what happened. He actually testified that, although Mrs. Reynolds "weaved" and "leaned out a little from the curve" at the time of the accident, Mrs. Reynolds was on her side and Mr. Cooper crossed the center line into Mrs. Reynolds' path.
Some physical facts create problems about the weight to be given the testimony of Mr. Womack. Mr. Womack's house is across a levee and across Hamilton Lane from the point of the accident. The floor of his house is below the top of the levee. Although his bedroom window is visible from the Old Benton Road, it is very doubtful whether his visibility would be sufficient to determine which car was on which side of the road at the time of the accident. Mr. Womack could have seen the collision, but it is doubtful whether he could see the center line of the road from the place where he was located.
With Mrs. Brown testifying that Mrs. Reynolds' car was across the center line, and Mr. Lombardino testifying that Mr. Cooper's car was across the center line, and with each driver testifying that he did not see the other until he was 20 to 25 feet away, and with the cars colliding squarely at the left front corner, the conclusion is almost inescapable that both cars were across the center line, and that both drivers were at fault. Consequently, neither can recover.
For these reasons, the judgment of the trial court is affirmed in part and reversed in part: The judgment rejecting the demands of Joyce Elaine Reynolds and James Willard Reynolds against Hartford Accident & Indemnity Company and Robert D. Cooper is affirmed; the judgment rejecting the demands of the third party plaintiff Robert D. Cooper against the Hartford Accident & Indemnity Company is affirmed; the judgment on the reconventional demand and third party petition of Robert D. Cooper against Joyce Elaine Reynolds and James Willard Reynolds is reversed, and there is now judgment in favor of Joyce Elaine Reynolds and James Willard Reynolds, and American *80 Service Mutual Insurance Company, defendants in reconvention and third party defendants, rejecting the demands of Robert D. Cooper, plaintiff in reconvention and third party plaintiff. Costs are to be borne equally by appellants Joyce Elaine Reynolds, James Willard Reynolds, and American Service Mutual Insurance Company on the one hand and by Robert D. Cooper on the other.

ON REHEARING
Before BOLIN, DIXON and PRICE, JJ.
BOLIN, Judge.
Rehearing was granted to review the correctness of our original opinion as to liability and quantum. This being a suit for damages, arising out of a collision between automobiles driven by Mrs. Joyce Elaine Reynolds and Robert D. Cooper, the primary question is whose "fault" caused these damages. (La.C.C.Art. 2315.)
The minutes of the trial reflect: "For reasons assigned in oral opinion by Judge Enos C. McClendon, Jr., the cause of the accident was the negligence of Mrs. Joyce Elaine Reynolds." The district judge subsequently assigned written reasons on the question of quantum wherein he said: "From the facts on the trial of these consolidated cases on March 7, 1968, this court concluded and orally ruled that the negligence of Mrs. Joyce Elaine Reynolds was the sole and proximate cause of the accident out of which these cases arose."
On the question of fact the case on appeal presents purely a question of fact. Under La.Const. Art. 7, § 29, this court is bound to consider "both the law and the facts". Jurisprudence and logic, however, dictate some weight should be accorded the factual findings of the trial judge and Courts of Appeal should avoid re-trying cases from the record. Our duty is to review the record and accord such weight to the factual findings of the lower court as they deserve, particularly if the outcome was influenced by the credibility of the witnesses appearing before the trial judge whose duty it is to evaluate their testimony.
From our review of the record we find ample evidence to support the judgment of the lower court. In addition to the drivers, three witnesses testified they saw the wreck: Mrs. Sandra Brown, Samuel Lombardino and Henry E. Womack. Captain James Thibodeaux, a Bossier City police officer, investigated the accident and testified extensively as to his findings. Other evidence relating to "fault" consisted of photographs and sketches of the area. As in most automobile accident cases there are inconsistencies and contradictions in the testimony of the witnesses. Undoubtedly the trial judge concluded the accident was caused by the fault of Mrs. Reynolds in operating her automobile partially on the wrong side of the road. This is a reasonable finding if greater weight is given to the testimony of Mrs. Brown and Captain Thibodeaux than to that of Mr. Lombardino and Mr. Womack. While Captain Thibodeaux said the debris was "in the middle of the street", he fixed the point of impact as being in the lane of travel properly occupied by the Cooper car. He testified, "I'd say the Reynolds car was on the Cooper side of the road."
The failure of either driver to see the other car approaching until it was only about 25 feet away is not alone sufficient to decide fault when we take into consideration the accident occurred on a winding two-lane road as the vehicles were emerging from an S-curve, and the Reynolds vehicle was only partially in the wrong lane. It is not contended either vehicle was traveling at an excessive rate of speed.
Left for consideration is the question of quantum. Mr. Cooper received painful injuries but fortunately they are not permanent. Following the accident he was hospitalized for three days and when *81 he left the hospital he continued to experience pain and discomfort in the area of his head, neck, shoulder and arm. Eight months after the accident he said he was still having intermittent headaches. However, his physician testified Cooper's condition would greatly improve, leaving him with no permanent pain or disability. For these injuries the lower court awarded Mr. Cooper the sum of $2000. He was also awarded special damages of $241.20, representing the amount expended by him for hospital, medical and doctor bills, and the $100 deductible portion of the collision insurance on his automobile. We do not find the trial judge abused his discretion in awarding Mr. Cooper $2000 for his personal injuries. The special damages of $241.20 for medical expenses was amply proved.
A question is presented as to whether Cooper is entitled to recover only the $100 deductible portion of his insurance or $1199.01, the stipulated cost of repairing his car. He testified he had $100 deductible insurance. The evidence as to the name of the insurance company or how the claim was handled is vague. In answer to a question of whether his insurer paid the loss, he said "I suppose so, yes sir, outside of $100. I had $100 deductible insurance." The trial court allowed Cooper only $100, reasoning since plaintiff paid only $100 and his insurer paid the balance, a partial legal subrogation was effected. If the evidence were sufficient to prove a partial subrogation this award would be proper under Official Comment (c) of Art. 697 of the Code of Civil Procedure:
"* * * If there has been a partial subrogation, and the suit is brought only by the subrogor or the subrogee, there is a nonjoinder of a necessary party. See Art. 642, supra. If the defendant fails to object timely to the nonjoinder of a necessary party, in a case of partial subrogation, the objection is waived and the court may make an adjudication. But if, in such a case, the partial subrogation is proven, the plaintiff may recover only his interest in the partially subrogated claim."
There are two types of subrogation recognized under our law, conventional and legal. (Louisiana Civil Code Arts. 2160, 2161). There is no evidence of a conventional subrogation in the instant case. Legal subrogation takes place, under Civil Code Art. 2161, in the following instances:
"Subrogation takes place of right:
"1. For the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his by reason of his privileges or mortgages.
"2. For the benefit of the purchaser of any immovable property, who employs the price of his purchase in paying the creditors, to whom this property was mortgaged.
"3. For the benefit of him who, being bound with others or for others, for the payment of the debt, had an interest in discharging it.
"4. For the benefit of the beneficiary heir, who has paid with his own funds the debts of the succession."
If the court should find a partial legal subrogation in this case it would have to do so under the provisions of subsection 3 of Article 2161. We find the evidence insufficient to satisfy the requirements of that subsection. It follows the lower court erred in not allowing Cooper to recover the full amount it would cost to repair his automobile.
The judgment appealed from is amended to increase the award in favor of Robert D. Cooper from $2341.20 to $3440.21 and, as thus amended, is affirmed at appellants' costs.
DIXON, Judge (dissenting).
The doctrinaire approach of the new majority does little to supplement the constitutional right of litigants to an appeal on the facts and law. A finding that the *82 negligence of one driver in a collision "was the sole and proximate cause of the accident" is not necessarily a finding of fact. It might be either a conclusion of law or fact, or a conclusion of mixed law and fact. Neither jurisprudence nor logic require the perpetuation of erroneous conclusions of law or fact.
Here a Louisiana appellate court, apparently for the first time, allows a driver (Cooper) to recover damages from a mid-street headlight-to-headlight collision when he testified that he did not see the other car until it was approximatley twenty feet away from him. His female companion on the front seat with him, whom he subsequently married, was not summoned and did not testify; nor was her deposition taken. There were no skid marks and the debris from the collision was in the center of the road.[1] An unimpeached witness observed the accident from a grandstand seat and testified that Cooper was across the center line. There is no explanation by either court or counsel why that witness' testimony should be disregarded.
Yet the court finds Cooper free from fault.
Every driver is supposed to keep the road ahead of him under observation. If he fails to see an automobile twenty feet ahead of him, he is not seeing what he should see. Both these vehicles were traveling at moderate speeds. Neither was across the center line any great distance. There is no evidence that either car made a sudden movement into the lane of the other. If either one had been observing the approach of the other automobile, the accident could have been avoided with ease.
The evidence is convincing that Cooper (as well as Mrs. Reynolds) was at fault in the accident, and consequently should not be allowed recovery.
I respectfully dissent.
NOTES
[1] The investigating officer, Thibodeaux, testified as follows in various places in the record:

(Rec., pages 116, 117)
"Q Now at the point of impact, what was the position of the cars or could you tell?
"A They was apart. Just like I said, it looked like to me the Reynolds car was on Mr. Cooper's side of the road.
"Q Well now, how do you say that?
"A Because it was across the middle of the line there sir.
"Q That would be after you got there, is that right?
"A That's right, after I got there.
"Q Were you able to tell though, when they came together where they were?
"A No sir."
(Rec., page 116)
"Q Where was the point of impact?
"A Well the only way it could be sir was right in the middle of the street."
(Rec., pages 117, 118)
"Q Now you say you think the point of impact, at the centerwould be
"A I'd say across the line, just about the center of the line, on account of the dirt and also the glass."
(Rec., page 121)
"A In the middle of the street."
(Rec., page 122)
"Q Could you tell where they were before the impact or at the moment of impact?
"A According to the debris in the middle of the street there, it was right in the middle of the street."
(Rec., page 126)
"Q Captain Thibodeaux, you did fix the point of impact though?
"A I say about the middle of the road. It was on the Cooper side of the road.
"Q Well, was it in the center or on the Cooper side?
"A It was on the Cooper side of the road but it was stillI'd say the Reynolds car was on the Cooper side of the road."