382 So.2d 245 (1980)
Mairon D. VEULEMAN, Plaintiff-Appellant,
v.
Thomas L. SIMS and American Hardware Mutual Insurance Company, Defendants-Appellees.
No. 7499.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1980.
Rehearing Denied April 25, 1980.
*246 Eugene P. Cicardo, Alexandria, for plaintiff-appellant.
Brame, Bergstedt & Brame, Joe A. Brame, Lake Charles, for defendants-appellees.
Before DOMENGEAUX, FORET, and SWIFT, JJ.
DOMENGEAUX, Judge.
On March 2, 1976, Mardi Gras or Fat Tuesday, at 11:45 P.M., the Volkswagen driven by plaintiff, Mairon D. Veuleman was stopped at a red light in the inner northbound lane of Johnston Street at its intersection with South College Road in Lafayette, Louisiana, when her car was rammed from the rear by an automobile owned and operated by defendant, Thomas L. Sims. Mr. Sims and his insurer, American Hardware Mutual Insurance Company, were timely sued in tort within one year of the accident date.
Three days after the accident, on March 5th, plaintiff consulted Dr. T. E. Banks, an orthopedic surgeon, complaining of some headaches and slight soreness in the neck and in the left low back area. After x-rays were taken and an examination was made, Doctor Banks diagnosed the injury as a mild cervical and left lumbar strain. He prescribed oral medications for Mrs. Veuleman to take.
Plaintiff next visited Dr. V. F. Chicola on March 6, 1976. Doctor Chicola made essentially the same diagnosis as Doctor Banks, but he prescribed pain pills, muscle relaxants, and a program of physical therapy.
On April 21, 1976, plaintiff sustained a broken wrist when she fell from a shelf on which she was standing. For this injury plaintiff was treated by Dr. D. L. Gamburg, an orthopedic surgeon. Plaintiff is claiming that this accident is causally related to the automobile accident, and that defendants should be made to respond in damages for this injury as well.
Finally, plaintiff visited Dr. Homer Kirgis on March 2, 1977, and again on April 28, 1977. Plaintiff's counsel had arranged these appointments. At these appointments plaintiff complained of headaches, backaches, and dizziness.
Trial was conducted on June 22, 1978.[1] After trial the Court awarded plaintiff a total of $4,145.51 for personal injuries, property damage, and special damages. Both parties filed an application for a new trial, which the Court granted, but only for the limited purpose of rehearing oral arguments.
*247 After the reargument[2] the trial court reconsidered the record and again held for plaintiff, but reduced the amount awarded to $3,655.79, disallowing $489.72 previously awarded because the plaintiff was allegedly paid this amount by her insurance company as reimbursement for property damages to her car. From this judgment plaintiff has appealed, listing the following specifications of error, which will be considered separately and in the order listed by plaintiff:

"SPECIFICATIONS OF ERROR
1. The trial court erred in not allowing the plaintiff, MAIRON D. VEULEMAN, to recover for medical expenses and treatment rendered her by Dr. Homer Kirgis of New Orleans, in the amount of $242.50.
2. The trial court erred in not allowing the fee of Dr. Homer Kirgis in the amount of $200.00 as an expert witness fee.
3. The trial court erred in finding that the plaintiff failed to establish a causal connection between the fall of April 21, 1976 and the accident of March 2, 1976.
4. The trial court erred in allowing only $1,750.00 for the plaintiff's personal injuries inasmuch as this amount clearly is contrary to the law which has been established by jurisprudence and the evidence of plaintiff's injuries and permanent damage.
5. The trial court erred in reducing the amount awarded for property damage in the original judgment in the sum of $489.72."
For the reasons set forth below, we reverse that part of the judgment which reduces the amount awarded as special damages in the original judgment. In all other respects we affirm the judgment of the trial court.
Specification # 1. The Court did not allow plaintiff to recover $242.50 in medical expenses charged by Doctor Kirgis because "Doctor Homer Kirgis did not actually treat plaintiff for her March, 1976, injuries . . .." Our review of the record confirms the Judge's finding for her injuries sustained in March of 1976, plaintiff was treated by Doctors Banks and Chicola. She last saw Doctor Chicola on April 30, 1976. She saw Doctor Kirgis for the first time ten months later on March 1, 1977. This appointment with Doctor Kirgis was arranged by plaintiff's attorney and appears to have been for the purpose of evaluating plaintiff's condition in preparation for trial rather than to treat it. In fact, Doctor Kirgis "prescribed" the same treatment that the doctor who last saw plaintiff prescribed. We cannot say that the trial court erred in refusing to allow recovery of this item.
Specification # 2. Doctor Kirgis charged plaintiff $200.00 as an expert witness for the taking of his brief deposition. The trial court set his expert fee at $100.00. Counsel for plaintiff asks this Court to increase the amount awarded to $200.00, the fee charged by Doctor Kirgis, arguing that the $100.00 fee awarded is unfair. He offers nothing in support of this argument and acknowledges that the trial court has a broad range of discretion when setting expert witness fees. La.R.S. 13:3666; Wm. T. Burton Industries, Inc. v. Busby, 348 So.2d 1328 (La.App. 3rd Cir. 1977). The trial court is not required to set the fee at the amount charged by the expert deponent. State, Through Department of Highways v. Kornman, 336 So.2d 220 (La.App. 1st Cir. 1976). Therefore, we find the trial judge did not abuse his discretion in setting Doctor Kirgis' fee at $100.00. We observe that of the three other doctors who testified, the fees of two were set at $107.50 and the other was set at $100.00.
Specification # 3. Plaintiff argues that the March 2, 1976, automobile accident caused her to have momentary blackouts. She claims that she experienced one of these momentary blackouts on April 21, *248 1976, when she was reaching for a box high in a shed or closet. As a result of the blackout she fell and broke her wrist.
The trial court twice found that there was no causal relationship between the automobile accident and plaintiff's fall seven weeks later. Although three doctors testified that dizziness could result from the automobile accident she was involved in, none of them testified that the injuries she sustained in the automobile accident were the cause of her fall in the shed. All four doctors who testified, at some point in their respective depositions, indicated that plaintiff's complaints of dizziness and blackouts either were never communicated to them or were communicated after the second accident. Viewing the medical evidence as a whole, we find the trial judge was correct in concluding that a causal relationship between the two accidents had not been established by plaintiff.
Specification # 4. Plaintiff argues that the total amount of the judgment, $3,655.79, is substantially low. Yet plaintiff offers no alternative amount that should be awarded and concedes that the trier of facts' quantum award may not be disturbed on appeal unless the record reveals there has been an abuse of discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977); Schexnayder v. Carpenter, 346 So.2d 196 (La.1977). We find no such abuse of discretion here. The evidence establishes that the special damages part of the award fully compensates plaintiff for the medical expenses incurred for treatment of the injuries suffered in the accident, property damage to her automobile,[3] wages lost while recuperating from the accident, and sums expended for the rent of an automobile while her Volkswagen was being repaired.
The preponderance of the evidence also shows that plaintiff's injuries were mild, required no hospitalization, and were of four to eight weeks in duration. We therefore feel that the award of $1,750.00 to Mrs. Veuleman as damages for her personal injuries is within the acceptable range of the trial court's discretion.
Although testimony by Doctor Kirgis and the plaintiff indicate that plaintiff was still suffering from effects of the accident almost a year later on March 1, 1977, contrary medical testimony by Doctors Banks and Chicola, the treating physicians, suggest that by the end of April, 1976, plaintiff no longer complained of back or neck problems and had, in fact, returned to work. They were of the opinion that the automobile injuries had run their expected course and no longer caused any problems. The trial judge did not err in giving greater weight to the testimony of the two treating physicians, who treated plaintiff on at least nine occasions between March 5, 1976, and April 30, 1976, than to the testimony of Doctor Kirgis who did not see plaintiff until a year after the accident and examined her only twice. Gates v. Ashy Construction Company, 171 So.2d 742 (La.App. 3rd Cir. 1965); Malone v. Yager, 295 So.2d 604 (La.App. 3rd Cir. 1974); Williams v. Liberty Mutual Insurance Company, 327 So.2d 462 (La.App. 3rd Cir. 1976).
Specification # 5. We agree with plaintiff that the original judgment should not have been reduced by the trial court after the new trial. In his reasons for judgment, the trial judge obviously considered the affidavit of A. J. Helouin, a claims manager from American Liberty Insurance Company, alleged by defendant to be plaintiff's automobile collision insurer, when he decided to reduce the amount awarded for special damages. The affidavit was offered as an attachment to an application for a new trial filed by defendants three days after the judgment of the first trial was signed on September 26, 1978.[4] Mr. Helouin verified the payment of *249 $489.72 by American Liberty to plaintiff. After noting the contents of the affidavit, the trial judge went on to say:
"An insurer who is forced to pay under its contract of insurance as the result of the negligence of a third party has a right of action under Article 2315 of the Civil Code for such a loss, without the execution of a conventional subrogation. Aetna Casualty & Surety Company v. Allen, 132 So.2d 240 (La.App. 3rd Cir. 1961). As a result, upon payment to plaintiff for the damage to her automobile, in accordance with its contract to do so, American Liberty Insurance Company became legally subrogated to plaintiff's right of action for this amount."
The Aetna case relied upon by the trial court cited several Supreme Court and Court of Appeal cases establishing the above rule. However, the Supreme Court apparently altered the rule in the case of Forcum-James Co. v. Duke Transportation Co., 231 La. 953, 93 So.2d 228 (1957). Therein the Court stated, in unequivocal language:
"It is a basic principle of the law that a tort-feasor is responsible only for the direct and proximate result of his acts and that, where a third person suffers damage by reason of a contractual obligation to the injured party, such damage is too remote and indirect to become the subject of a direct action ex delicto, in the absence of subrogation.
Even the broad language used in Article 2315 of our Code does not justify a departure from the above stated doctrine.[5] Indeed, to permit a person to proceed against a wrongdoer in every instance where such person has sustained damage by reason of his contractual obligation to the injured party would open the door to the prosecution of claims for damages indirectly and remotely connected with the tortious act and encourage a multiplicity of suits from which numerous conflicts of interest might ensue. Parties situated in plaintiff's position can readily protect themselves by obtaining from the injured person a conventional subrogation of the latter's rights and, thus, the tort-feasor can be made to respond for the direct and foreseeable consequences of his act in a single suit."
Two recent cases which bear a close resemblance to the facts of this case impliedly relied on the Forcum-James decision. In Lagrue v. Murrhee, 291 So.2d 844 (La.App. 4th Cir. 1974), the Court awarded plaintiff the full amount of $1,250.00 in property damages for his wrecked vehicle, even though the plaintiff acknowledged receiving the full amount from his insurance company. Defendants urged the Court to construe as a partial legal subrogation the payment of $1,250.00 the plaintiff admitted receiving from his insurer. But the Court held that absent proof of a valid subrogation, either conventional or legal (see C.C. Articles 2160 and 2161), defendants could not question the $1,250.00 property damage award.
In Reynolds v. Hartford Accident & Indemnity Company, 228 So.2d 76 (La.App. 2nd Cir. 1969), the Court of Appeal allowed plaintiff in reconvention the full amount of the cost of repairing his automobile where there was no evidence of a conventional subrogation and the evidence was insufficient to satisfy the requisites for existence of legal subrogation under La. C.C. Article 2161(3). Plaintiff in reconvention admitted to having $100.00 deductible collision insurance and that the insurance company probably paid all of the amount above $100.00. The Court noted, however, that the evidence as to the name of the insurance company *250 on how the claim was handled was vague.
Apart from the affidavit there is nothing in the record of this case to suggest that the plaintiff had collision insurance or that anyone other than the plaintiff paid for the repairs to her automobile. Moreover, no insurance contract was ever offered as evidence nor has the alleged collision insurer ever intervened in this suit.
Even if American Liberty did pay $489.72 to the plaintiff as verified in the affidavit, there is no evidence in the record whatsoever, even when considering the affidavit,[6] to demonstrate that American Liberty secured a legal or conventional subrogation from the plaintiff. In the absence of such proof, and in accordance with the mandate of the Forcum-James decision, we hold that the original award to the plaintiff must be reinstated.

DECREE
For the above and foregoing reasons the judgment of the District Court is amended to increase the amount awarded plaintiff from $3,655.79 to $4,145.51. In all other respects the judgment is affirmed. Costs of this appeal are assessed one-half to plaintiff and one-half to defendants.
AFFIRMED.
NOTES
[1] The parties stipulated that the negligence of Mr. Sims, the defendant, was the sole cause of the accident.
[2] The record indicates that the arguments made on the motion for a new trial were accepted by the judge as the oral arguments for the new trial.
[3] The trial court judgment allowed only $146.75 for property damage to Mrs. Veuleman's automobile. As explained under Specification # 5 below, that amount will be increased to $636.47, the actual cost of the repairs.
[4] Defendant's pleading actually was styled "Motion for Summary Judgment and/or Peremptory Exception of No Right of Action and/or Application for New Trial."
[5] Footnote by the Court of Appeal. In a footnote at this point in the opinion, the Supreme Court added that this new rule, of requiring parties to obtain a subrogation from the injured party, was effective notwithstanding the ruling apparently to the contrary in London Guarantee & Accident Insurance Co. v. Vicksburg, S. & P. R. Co., 153 La. 287, 95 So. 771 (1923). The London case was among those cases cited by Aetna establishing the rule relied upon by the trial court in this case.
[6] Even if Mr. Helouin had verified that American Liberty was subrogated to plaintiff's property damage claim to the amount of its payment, we question whether this affidavit could even be considered since it was submitted after judgment was signed and the trial court did not provide for the taking of additional evidence at the new trial. Nothing in the record suggests that defendants lacked the opportunity to prove during trial that plaintiff was not entitled to the full amount of property damages. In fact, defendants allege that all parties were aware of the insurance payment since November 24, 1976, a year and a half before trial.