291 So.2d 844 (1974)
Doris E. LAGRUE, wife of and Ralph R. Lagrue, Individually and on behalf of the community and as administrator of the Estate of his minor son, Terrance R. Lagrue
v.
Joseph MURRHEE et al.
No. 6077.
Court of Appeal of Louisiana, Fourth Circuit.
March 8, 1974.
Rehearing Denied April 9, 1974.
Writ Refused May 24, 1974.
*845 Cockfield & Gravolet, James C. Cockfield, New Orleans, for plaintiffs-appellees.
Robert J. Young, Jr., New Orleans, for defendants-appellants.
Before REDMANN, STOULIG and BOUTALL, JJ.
STOULIG, Judge.
Plaintiffs, Ralph and Doris Lagrue, filed suit individually and on behalf of their minor son Terrance to recover general and special damages sustained in an intersectional collision between the Lagrue vehicle and an ice cream truck. Named defendants were Joseph Murrhee, the truck driver; Red Wing Frozen Confections, Inc., the owner of the truck; the Insurance Company of North America (INA) erroneously alleged to be Red Wing's insurer; and Government Employees Insurance Company (GEICO), uninsured motorist coverage carrier of plaintiffs. GEICO was voluntarily dismissed as a party defendant prior to trial under the mistaken belief that INA insured Red Wing. Later both counsel stipulated that Red Wing was self-insured *846 and that INA was not the liability insurer of the truck involved in the accident. Nonetheless, when judgment was rendered awarding Mrs. Lagrue $5,300 and Mr. Lagrue $2,762.83 for special damages and an additional $300 for the benefit of his son, INA was cast in judgment solidarily with Red Wing and Murrhee. All three defendants have appealed.
Defendants first question the assessment of liability. They argue plaintiff-driver Mrs. Lagrue establishes her negligence or contributory negligence in her own testimony. It may be summarized in this way: On February 7, 1971 at 11:30 a. m., Mrs. Lagrue was driving westward on General Ogden Street in the City of New Orleans. As she approached the uncontrolled intersection of Pear Street, she reduced the speed of her vehicle from 20 to 25 miles per hour to 10 to 15 miles per hour. Before entering the intersection she looked both to her left and right and observed no approaching traffic for a distance of one and one-half car lengths from the corner (which is the distance she was able to see into Pear Street before driving into the intersection). The Lagrue car then proceeded through the intersection at 15 to 20 miles per hour. After its front half had cleared the intersection it was struck on the left by the defendant's ice cream truck traveling north on Pear Street. The impact, to the left center and rear of her car, caused her to lose control. Before stopping on a neighboring lawn, she struck a parked car on her left. At no time before the collision did Mrs. Lagrue see the truck.
Defendants would have us conclude this plaintiff was negligent in failing to observe what she should have seen before she entered the intersection. There is no evidence upon which we can predicate such a conclusion.
Plaintiff testified she could see for one and one-half car lengths to her left before entering the intersection. The truck was not there. Troy Adams, a witness driving a vehicle immediately behind the truck prior to the impact, established it was moving in excess of 20 to 30 miles per hour and that it failed to slow down before entering the intersection and colliding with plaintiff. Perhaps this accounts for her failure to see the truck. There is also evidence indicating visibility was restricted by the location of a house on the corner next to the sidewalk. However, the physical scene is not described sufficiently to determine whether this is a blind corner or whether plaintiff's visibility to her left was greater than that to which she testified. Regardless, the defendants, having pleaded contributory negligence, had the burden of proving Mrs. Lagrue could have seen the approaching truck had she timely observed its presence. This they failed to do. (We note here the driver of the truck could not be found at the time of the trial, but it was stipulated he was within the course and scope of his employment at the time.)
We conclude from the evidence there is no manifest error in the trial court's factual findings. This situation is governed by LSA-R.S. 32:121(B) and M.C.S. 38:99, which established a right-of-way in favor of the motorist approaching an uncontrolled intersection from the right. See Grevemberg v. Paone, 183 So.2d 357 (La. App.4th Cir. 1966). The evidence establishes Mrs. Lagrue entered the intersection at a reasonable speed and looked in both directions, thus fulfilling the duty of care required of a reasonable and prudent motorist.
We will consider the first alternative contention of appellants that the award of $5,300 to Mrs. Lagrue is excessive. She was awarded $3,300 for pain and suffering for her injuries, which included a flexion and extension injury of the cervical spine (the most serious), a flexion injury of the lumbar spine and multiple abrasions and contusions. In addition she received $2,000 special damages for loss of wages.
*847 Immediately after the accident, she was examined at Touro Infirmary emergency room and sent home. Four days later (February 11), upon finding acute muscle spasm, her treating orthopedist, Dr. Stuart Phillips, hospitalized Mrs. Lagrue for traction (head halter), physical therapy, and sedation. After her release from the hospital on February 18, plaintiff continued seeing Dr. Phillips periodically and undergoing physiotherapy on a frequent basis until her discharge from medical treatment on May 20, 1971 with the instruction that she could return to work within a few weeks.
Mrs. Lagrue suffered severe pain at the outset of her injury, which, with treatment, gradually subsided so that after four months she experienced intermittent discomfort. In view of this medical history we find that the award of $3,300 for pain and suffering is not excessive. We have been guided by Curry v. Vallot, 271 So.2d 711 (La.App. 1st Cir. 1972); and Joseph v. Aetna Life & Casualty Insurance Company, 271 So.2d 714 (La.App.1st Cir. 1972), in arriving at the conclusion that the much discretion vested in the trial judge by LSA-C.C. art. 1934(3) has not been abused.
The second element of damages granted to Mrs. Lagrue was $2,000 for loss of wages. At the time of the accident, she was employed as a licensed practical nurse at Touro Infirmary at a salary of $2,901 per hour (the hospital carries out the cent rate to three figures). Plaintiff worked a minimum of 40 hours per week and due to her injury she missed 17 weeks and one day of work or a total of 688 hours, which when multiplied by $2,901 equals $1,995.88. The loss-of-earnings award exceeds this amount by $4.11; however, the Touro payroll records indicate plaintiff occasionally worked overtime and therefore we will not amend this judgment to reduce the award by $4.00. Rather we conclude she would have earned this much (probably more) working overtime during that period.
Next, defendants question one of the items of special damages awarded to Mr. Lagrue, namely, cab fare of $111.10 to transport his wife to the hospital for physiotherapy. Receipts substantiating this amount were produced.
It is argued Mr. Lagrue failed to minimize his damages. Defendants submit that though plaintiffs' collision carrier declared the automobile a total loss and promptly settled the claim to Mr. Lagrue's satisfaction, nonetheless he did not purchase another car until some eight months after the accident. The inference is that had he purchased a car sooner, he would have obviated the expenditure of cab fare. In the absence of any showing that Mr. Lagrue arbitrarily withheld the purchase of a new car to inflate his damages, the failure to immediately replace his demolished vehicle is not a breach of the obligation expressed in LSA-C.C. art. 2323 to minimize his loss.
Finally, defendants question the award of $1,250 in property damage for the wrecked vehicle. Mr. Lagrue acknowledged he collected this amount from his insurer GEICO. At one point plaintiffs' counsel unsuccessfully sought to informally intervene on GEICO's behalf based upon a letter of authority. No pleadings for this purpose were ever filed, despite the fact the trial court offered counsel an opportunity to do so.
Without producing a written subrogation, defendants urge us to construe as a partial legal subrogation the payment of $1,250 Mr. Lagrue admitted receiving from GEICO. Accordingly, this would limit plaintiffs' property damage recovery to the $100 deductible. Defendants cite Reynolds v. Hartford Accident & Indemnity Company, 228 So.2d 76 (La.App. 2d Cir. 1969), which indicated testimony of payment by the insured is sufficient to establish a partial legal subrogation in favor of the collision insurer. It is reasoned this subrogation is created as of right by LSA-C.C. art. 2161(3):
"Subrogation takes place of right:

* * * * * *
3. For the benefit of him who, being bound with others, or for others, for the *848 payment of the debt, had an interest in discharging it."
We disagree with this rationale. This type of legal subrogation presupposes payment was made by a subrogee solidarily liable with his subrogor. See Pringle-Associated Mortgage Corporation v. Eanes, 254 La. 705, 226 So.2d 502 (1969). In the instant case there is no solidary liability between GEICO and defendants. GEICO could only have acquired a conventional subrogation as defined by LSA-C.C. art. 2160(1)[1] and this it failed to do. Absent proof of a valid subrogation, defendants cannot question the $1,250 property damage award.
Finally all the litigants established that at the time of the accident there was no contract of insurance issued by INA to Red Wing Frozen Confections, Inc., and therefore suit against this insurer is dismissed.
For the reasons assigned, the judgment appealed from is reversed insofar as it cast Insurance Company of North America in judgment and in all other respects, the judgment appealed from is affirmed. Costs of this appeal are to be borne by defendants.
Reversed in part; affirmed in part.
REDMANN, J., dissented in part and filed opinion.
REDMANN, Judge (dissenting in part).
The majority opinion says R.S. 32:121 "establish[es] a right-of-way in favor of the motorist approaching an uncontrolled intersection from the right."
Our earlier decisions of Gutelius v. Phoenix Ins. Co., La.App. 1973, 266 So.2d 717, 718, writ refused 263 La. 235, 267 So. 2d 727, and Bailey v. Hodge, La.App.1973, 284 So.2d 799 (quoting Gutelius), say "The so-called directional right-of-way rule does not convert the street into a superior one, having the right-of-way * * *."
We should hold plaintiff contributorily at fault for having failed to slow her vehicle to a speed at which she would be able to (1) determine whether other traffic was approaching the intersection at the same time and (2) yield to, i. e., stop for, traffic (if any) from her right. The obligation to yield may be owed only to drivers from the right under R.S. 32:121, subd. A, but the obligation to slow enough to see other traffic and determine who should yield to whom is an obligation of ordinary reasonable prudence.
Driving headlong into an uncontrolled intersection with a two-way street cannot reasonably be held prudent on the hindsight grounds that the colliding car happened to come from one's left rather than his right. That plaintiff may have been driving slightly less fast than defendant (15 to 20 mph compared to defendant's 20 to 30 mph) equally should not affect the result. Both were driving unreasonably fast for an uncontrolled intersection, and the imprudence of neither is removed by a statute which provides only which one should have allowed the other to proceed if both had been reasonable (and virtually stopped for safety's sake).
NOTES
[1] "The subrogation is conventional:

1. When the creditor, receiving his payment from a third person, subrogates him in his rights, actions, privileges, and mortgages against the debtor; this subrogation must be expressed and made at the same time as the payment."