**FIDELITY NATIONAL BANK OF BATON ROUGE**

v.

**The AETNA CASUALTY AND SURETY COMPANY.**

**Civ. A. No. 81–915–A.**

United States District Court,
M.D. Louisiana.

March 15, 1984.

Gordon A. Pugh, Rodolfo J. Aguilar, Jr., Breazeale, Sachse & Wilson, Baton Rouge, La., for plaintiff.

Carolyn Pratt Perry, Franklin, Moore & Walsh, Baton Rouge, La., for defendant.

JOHN V. PARKER, Chief Judge.

This matter is before the court on a motion for summary judgment filed on be-

half of third-party defendant, MGIC Indemnity Corporation (MGIC). The issues have been extensively briefed prior to and post oral argument.

This case is a fall out from the pervasive issuance and use of bank credit cards in recent years. A third-party demand pushes this federal court, exercising diversity jurisdiction, into the furthermost reaches of one of the unexplored thickets of Louisiana's law of solidary obligations, which the Supreme Court of Louisiana is rapidly rewriting.[1] The issues raised are important to the fabric of Louisiana's law of obligations and have not been passed upon by any Louisiana court, so far as we can determine. Having no vehicle by which to obtain input from a Louisiana court,[2] this court must enter the morass of obligations *in solido* with little or no state guidance. This court is, nevertheless, duty bound to resolve the state law issues according to its best determination as to how a Louisiana court would resolve them.[3]

### THE FACTS

Plaintiff, Fidelity National Bank (the Bank) has filed this action against the surety on its bankers blanket bond, the Aetna Casualty & Surety Company (Aetna), to recover a loss incurred by the Bank allegedly caused by the fraudulent activities of a third party, Great American Distributing Company (GADC). The Bank and GADC entered an agreement under which GADC would make sales to buyers who

1. See, e.g., *Foster v. Hampton*, 381 So.2d 789 (La.1980), holding that a vicariously liable master and his negligent employee are bound *in solido* to the victim, expressly overruling *Cox v. Shreveport Packing Co.*, 213 La. 53, 34 So.2d 373 (1948); *Sampay v. Morton Salt Co.*, 395 So.2d 326 (La.1981), holding that a victim who compromised his claim against the negligent employee, reserving his rights as to the employer, may pursue his claim against the vicariously liable employer because of their solidary liability, expressly overruling *Williams v. Marionneaux*, 240 La. 713, 124 So.2d 919 (1960); and *Hoefly v. Government Employees Ins. Co.*, 418 So.2d 575 (La.1982), holding that timely suit by the victim against the tort-feasor interrupts prescription against the victim's uninsured motorist carrier, because the tort-feasor and the carrier are bound *in solido* to the victim. See also,

Comment, *Prescribing Solidarity: Contributing to the Indemnity Dilemma*, 41 La.L.Rev. 659 (1981); Comment, *Tilting Against Windmills: A Solidary Rejoinder*, 41 La.L.Rev. 1279 (1981); and *Johnson, Developments in the Law, 1980–81: Obligations*, 42 La.L.Rev. 388, 390 (1982).

2. The Supreme Court of the United States and federal circuit courts of appeals are authorized to certify questions of state law to the Supreme Court of Louisiana for its consideration under La.R.S. 13:72.1 and the courts Rule 12. Federal district courts have no such authorization.

3. *Commonwealth Life Insurance Co. v. Neal*, 521 F.Supp. 812, 817 (M.D.La.1981) affirmed 669 F.2d 300, 306, n. 2 (5th Cir.1982).

would charge the sales price to their "plastic money" cards (VISA or Master Charge cards issued by banks other than plaintiff). The sales tickets would be submitted to the Bank by GADC and the Bank would purchase the sales tickets (subject to stipulated reserve provisions and discounts) and process them for ultimate payment by the customers' banks. The scheme alleged by the Bank is that GADC solicited sales of "vacation packages" by telephone, assuring prospects that all sales would be subject to a thirty-day approval by the customer. GADC allegedly secured the "plastic money" card numbers of prospects and without waiting for approval, GADC immediately wrote up final sales and submitted them to the Bank. The Bank paid GADC based on the sales tickets submitted; but when customers cancelled or disclaimed the purchases to their own banks, plaintiff was required to honor them, although it had already paid GADC. The Bank thus paid GADC and also had to make refunds on those sales which the customer did not approve (allegedly some were never authorized, even conditionally). GADC apparently sold a shoddy "vacation package" because the cancellations and disclaimers, in a few short months, reached incredible proportions and the Bank eventually terminated the agreement. Under its national VISA and Master Charge agreements, the Bank was required to continue to make refunds for a period following termination. The Bank claims that it lost nearly a million dollars in the GADC venture and demands that Aetna pay the loss under the blanket fidelity bond which provides for payment of any loss to the Bank resulting from "theft, false pretenses, common law or statutory larceny," committed by third persons, such as GADC. The Bank, alleging that it has been fleeced by GADC, demands that Aetna pay the loss.

Aetna, while admitting that it wrote the blanket bond for the Bank, denies coverage, pleading several specific policy exclusions. The Bank's claims against Aetna have, up to this point, survived Aetna's motion for summary judgment, based on these exclusions.

## THE ISSUES

The present dispute, however, involves Aetna's third-party demand against MGIC, predicated upon the allegation that if Aetna has any liability to the Bank under its policy, then MGIC is liable to Aetna under MGIC's policy for all or part of the debt. MGIC is the insurer under a policy issued to the Bank covering (among other risks) liability of the officers and directors of the Bank "to any party" as a result of any "wrongful act" (all parties agree that "wrongful act" equates to negligence) committed by any officer or director. Aetna alleges that the Bank's loss was caused, wholly or in part, by the negligence in several respects of the Bank's own officers and directors; and Aetna claims that it has an "independent cause of action" for indemnity, or at least contribution, against the officers and directors and, hence, under Louisiana's direct action statute, La.R.S. 22:655, against their liability insurer, MGIC. No officer or director has been joined in the action. Aetna basically alleges that the Bank's officers should have anticipated the fraudulent activities of GADC and prevented them or at least discovered the fraud earlier than they did and should have taken steps to prevent additional loss.

To Aetna's third-party demand, MGIC has filed a motion for summary judgment based on the following grounds: (1) prescription, (2) that Aetna cannot subrogate against its own insured and, (3) that no direct action lies against MGIC.

## THE LAW

### I

 Turning first to trivial issues raised by MGIC, there is no doubt that MGIC's policy, a "directors' and officers' liability policy," is a "policy or contract of liability insurance" under La.R.S. 22:655; and since it was issued in Louisiana, the "no action" provisions of MGIC's policy do not bar a direct action by Aetna. *Symoenides v. Cosmar Compania Naviera, S.A.*,

494 F.Supp. 240 (M.D.La.1980). As to the claim that Aetna is subrogating against its own insured, Aetna here asserts a claim for a loss alleged to have been caused by the officers and directors of the Bank, and it asserts that claim against MGIC as the liability insurer of those notables. Aetna's insured here is *the Bank*, not its officers and directors, and Aetna here seeks to assert what it labels its "independent cause of action" against MGIC for loss which was allegedly caused by MGIC's insureds. Aetna asserts no claim against its own insured.

## II

MGIC's plea of prescription, however, is a serious one which thrusts this court into Louisiana's solidarity thicket because Aetna argues that Aetna and MGIC are solidary obligors and that under article 2103 of the Louisiana Civil Code, it may assert a claim for indemnity or contribution against a solidary co-obligor which does not arise until Aetna is itself cast in judgment. *Matt v. Cox*, 408 So.2d 389 (La.App. 1st Cir.1981). Hence, Aetna concludes, that its action against MGIC could not possibly have prescribed, since it has not yet been cast in judgment.

Louisiana's civilian theory of obligations *in solido* has long confounded common law lawyers, but, rightly understood, the articles of the Louisiana Civil Code provide a complete system for regulating the rights and responsibilities of creditor versus debtors as well as the relations of the debtors among themselves. Article 2091 provides, "There is an obligation *in solido* on the part of the debtors, when they are all obliged to the same thing, so that each may be compelled for the whole, and when the payment which is made by one of them, exonerates the others toward the creditor." Article 2092 provides, "The obligation may be *in solido* although one of the debtors be obliged differently from the other to the payment of one and the same thing; for

instance, if the one be but conditionally bound, whilst the engagement of the other is pure and simple, or if the one is allowed a term which is not granted to the other." Article 2094 provides, "The creditor of an obligation contracted *in solido* may apply to any one of the debtors he pleases, without the debtors' having a right to plead the benefit of division." And article 2097 specifically provides, "A suit brought against one of the debtors *in solido* interrupts prescription with regard to all."

Any consideration of recent Louisiana jurisprudence in this area requires that one be fully aware of the precise issue adjudicated by the court in each case and of the facts of each case. The recent cases—some of which have been commended [4] and some condemned [5]—when subjected to critical analysis, demonstrate that the supreme court has been almost exclusively concerned about relations between the victim (creditor) and his alleged debtors *in solido*. In several of the cases the court has been very careful to point this out and to note that a finding of solidarity among debtors as regards the victim does not resolve the relationships of the co-debtors to each other. It is this latter relationship with which we are here concerned, because it matters not to the Bank how the debt is resolved among the co-debtors, after the Bank has been paid.

In *Foster v. Hampton*, 381 So.2d 789 (La.1980), the Supreme Court of Louisiana squarely held that under article 2320 a master and his negligent employee were solidarily liable to the victim of the employee's negligence, overruling prior jurisprudence to the contrary. Thus, the victim's suit against the employee, instituted some years earlier, interrupted prescription against the vicariously liable master. The court noted the vicarious nature of the master's liability and further noted that they are not joint tort-feasors, but held that *as to the victim* both are obligated for the

---

**4.** See Johnson, *Developments in the Law, 1979–1980: Obligations* 41 La.L.Rev. 355 (1981), commenting on *Foster v. Hampton,* 381 So.2d 789 (La.1980).

**5.** See Johnson, *Developments in the Law, 1980–81: Obligations,* 42 La.L.Rev. 388, 390 (1982), commenting on *Sampay v. Morton Salt Co.,* 395 So.2d 326 (La.1981).

same thing—repair of the damage to the victim. 381 So.2d at 791.[6]

In *Sampay v. Morton Salt Co.*, 395 So.2d 326 (La.1981), which Professor Johnson maintains is unequivocally wrong and should be promptly overruled,[7] the court held that a victim who settled his claim against the negligent employee with reservation of his rights,· could continue the claim against the vicariously liable master, on the grounds that the employee and the master were bound *in solido*. This court takes no sides on the issue of the correctness of *Sampay* when it points out that the *Sampay* court was concerned only with the relationship between the victim (creditor) and the co-debtors.

In *Kern v. Travelers Ins. Co.*, 407 So.2d 2 (La.App. 4th Cir.1981), the court, relying on *Sampay, supra,* held that the financially responsible parent[8] and the negligent minor child were liable *in solido* to the victim. Therefore, a timely suit by the victim (creditor) against the parent (and his liability insurer) interrupted prescription against the minor; and the minor could be joined as a defendant after he reached the age of majority, despite the fact that the suit against him was filed more than one year after the accident. *Erdey v. American Honda Co., Inc.*, 415 So.2d 449 (La. App. 1st Cir.1982), held that the tort-feasor causing the accident and the physician who negligently treated the victim's injuries were solidarily liable to the victim, despite the fact that the original tort-feasor may be responsible for an additional sum over that for which both the physician and the tort-feasor could be held.

In *Hoefly v. Government Employees Ins. Co.*, 418 So.2d 575 (La.1982), the Supreme Court held that the victim's timely suit against the tort-feasor interrupted prescription against the victim's uninsured motorist carrier because the uninsured motorist carrier and the tort-feasor are solidarily liable to the victim, despite the fact that the uninsured motorist carrier is bound by the combined efforts of the tort-feasor's actions, the uninsured motorist statute, and the issuance of a contract to the victim, while the tort-feasor is bound merely because of his delict. While that decision will no doubt cause uprisings in Louisiana academia, it should be noted that the court was concerned only with solidary liability *to the victim.*[9]

In *Chalstrom v. Desselles*, 433 So.2d 866 (La.App. 4th Cir.) *cert. denied*, 438 So.2d 215 (La.1983), the court of appeal held that timely suit by the victim against one health care provider interrupts prescription as to all other health care providers who attended the victim, on the grounds that they are solidarily liable.

The latest supreme court case which we found is *Narcise v. Illinois Central Gulf Railroad Co.*, 427 So.2d 1192 (La.1983).

---

**6.** Since the issue was not before it, the court could not have intended to indicate any restriction upon the right of the vicariously liable master to indemnification from the negligent employee who actually caused the harm, a right which Louisiana has long recognized and enforced. La.Civ.Code art. 2106; see e.g. *Williams v. City of Baton Rouge,* 200 So.2d 420 (La.App. 1st Cir.1967), amended and affirmed 252 La. 770, 214 So.2d 138 (1968). Nor could the court ·have intended to reduce the master's right of indemnification to a mere claim of contribution under article 2103.

**7.** Johnson, *Recent Developments in the Law, 1980–81: Obligations,* 42 La.L.Rev. 388, 390 (1982).

**8.** Article 2318. The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them the recourse against those persons.

The same responsibility attaches to the tutors of minors.

**9.** La.R.S. 9:5628 establishes a two year prescription period for uninsured motorist claims reckoning from the date of the accident. The insuring provisions of course constitute a contract between the victim and the insurance company and without such legislation uninsured motorist claims would be subject to the ten year prescription, as any other contract. La.Civ.Code art. 3544. Since the victim in *Hoefly* waited more than four years after the accident to institute his claim against his own uninsured motorist carrier, a holding of non-solidarity between the insurance carrier and the tort-feasor would have left, the victim with no recourse against his own uninsured motorist carrier.

There, the court, responding to questions certified to it by the federal Fifth Circuit,[10] considered a case involving a third-party demand. The victim, who was injured while employed by the defendant railroad and while working aboard a rail car, filed suit against his allegedly negligent employer under the provisions of the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq. The railroad, in turn, filed third-party demands against the manufacturer of the rail car and the manufacturer of other allegedly defective equipment, demanding indemnification, or alternatively, contribution. The main demand was severed, tried and the jury found the railroad to be negligent and awarded damages. The third-party defendants then moved to dismiss the third-party demands. The supreme court held that there is solidary liability between the employer railroad and the third-party tort-feasors,[11] commenting:

> The fact that ICG is liable under the provisions of FELA and third party defendants may be liable under general tort law does not preclude an in solido obligation to the extent that each is liable for certain damages sustained by plaintiff. Article 2092 specifically provides that an "obligation may be in solido, although one of the debtors be obliged differently from the other to the payment of one and the same thing." It is the coextensiveness of the obligations for the same debt, and not the source of liability, that determines the solidarity of the obligation. Both ICG and third party defendants (according to the third party demand) are coextensively liable for certain damages sustained by plaintiff and may therefore be liable in solido.
>
> The fact of different defenses, different prescriptive periods, different beneficiaries in some cases, and different elements of damages does not detract from the in solido nature of the obligation of the two debtors. These factors may be significant in determining the existence and extent of the liability of each debtor toward the plaintiff. However, once the extent of each debtor's liability has been determined, there is an in solido obligation *as to their common liability to the injured party.* While one item of damages may be recoverable against one debtor and not the other, the parties are liable in solido as to every item for which plaintiff can compel payment from either. (427 So.2d at 1195, emphasis supplied)

### III

In the case before this court, Aetna maintains that it and MGIC are liable *in*

---

**10.** The Fifth Circuit has added its own gloss to this difficult area of Louisiana law. In *Joiner v. Diamond M Drilling Co.,* 688 F.2d 256 (5th Cir. 1982), a seaman was injured offshore aboard the vessel of his employer, Diamond M. He sued Diamond M timely and subsequent to his death his widow added the manufacturer of allegedly defective equipment. Both defendants asserted third-party demands against the attending physician who allegedly was guilty of malpractice, contributing to the victim's death. The main defendants settled with the widow but continued to maintain their third-party demands against the physician. The Fifth Circuit, relying upon *Erdey v. American Honda Co., Inc.,* 415 So.2d 449 (La.App. 1st Cir.1982), held that the attending physician was liable *in solido* to the victim along with the original tort-feasors. The court further rejected the claim of the original tort-feasors for indemnity from the physician but did hold that under article 2103 they would be entitled to contribution from him. In *Billiot v. American Hospital Supply Corp.,* 721 F.2d 512 (5th Cir.1983), relying upon the *Chalstrom* decision, the Fifth Circuit held that timely

suit by the victim (creditor) against the manufacturer of allegedly defective breast implant devices interrupted prescription against the physician who allegedly negligently implanted them in plaintiff's breasts. In the meantime, a different panel of that court concluded in *Johnson v. Ford Motor Co.,* 707 F.2d 189 (5th Cir.1983), that the negligent motorist and the manufacturer of the victim's allegedly defective gasoline tank (which burst into flames in a rear-end collision) were both liable *in solido* to the victim. Hence a settlement by the victim with the motorist, without reservation of rights against the manufacturer, also released the manufacturer.

**11.** The court further held that a railroad which is liable to its employee under FELA may assert a claim for contribution (and possibly indemnity) against the manufacturer of defective equipment which caused or contributed to the injuries. In the absence of specific facts, however, the court declined to express an opinion as to the indemnity claim of the railroad. 427 So.2d at 1195–1196.

*solido* to the Bank for the loss and that Aetna as an "innocent party" who is required to respond solely because of its contract with the Bank, has an "independent cause of action" for indemnity against MGIC. The fact of the matter is, of course, that MGIC is at least as "innocent" of wrongdoing as is Aetna—both are insurers which have underwritten certain risks for a premium; neither is an actor in the events which caused the loss.

It is certainly conceivable under the pleadings in this case that although the Bank's initial loss was caused solely by the fraudulent activities of GADC, for which Aetna alone would be liable, the facts may indicate that at some point prior to discovery of the fraud, the Bank's officers and directors should have recognized these activities and taken affirmative steps to save the Bank from further loss. Under the present Louisiana jurisprudence, a Louisiana court undoubtedly would conclude that GADC and the officers and directors of the Bank (and their liability insurer, MGIC) are to that extent bound *in solido* to the Bank (victim). *Narcise v. Illinois Central Gulf Railroad Co.*, 427 So.2d 1192 (La.1983); *Hoefly v. Government Employees Ins. Co.*, 418 So.2d 575 (La.1982); *Erdey v. American Honda Inc.*, 415 So.2d 449 (La.App. 1st Cir.1982); La.Civ.Code art. 2092. Aetna, then, would be liable to the Bank (creditor) under its contract with the Bank for the loss caused by GADC's fraud. Despite the fact that Aetna's liability to the Bank would be contractual and MGIC's liability to the Bank would be delictual (as the liability insurer of the allegedly negligent officers and directors), each would be liable to the Bank for all or part of the same loss. Thus a Louisiana court might conclude that Aetna and MGIC are liable *in solido* to the Bank. That conclusion does not, however, answer the question before us: we are concerned here not with liability to the

Bank (victim, creditor) but with the relationships of the co-debtors among themselves.

## A.

▮ While Louisiana courts and lawyers frequently declare that, as among themselves, each co-debtor *in solido* is liable only for his own part, or virile share, and that contribution among solidary obligors is permitted, the statement is and always has been, only partly correct. A finding of solidary liability to the creditor (victim) does not automatically result in contribution among the solidary debtors, despite the provisions of article 2103.[12] There are many instances where Louisiana law does not require that each co-debtor *in solido* stand for his virile share, as between co-debtors. Louisiana has long recognized the doctrine of indemnity among joint tortfeasors (liable *in solido* to the victim) where the actual fault is attributable to only one of them and the other is only technically, constructively or vicariously liable for the acts of the other. Under those circumstances, Louisiana allows full indemnity, not contribution, against the one primarily or "actually" responsible for the act which caused the injury. See *Sutton v. Champagne*, 141 La. 469, 75 So. 209 (1917), (parent who gave minor .22 cal. rifle liable to indemnify parent of minor who negligently fired weapon, injuring victim); *Appalachian Corp., Inc. v. Brooklyn Cooperage Co., Inc.*, 151 La. 41, 91 So. 539 (1922), (recent purchaser of building held liable to victim for injury on premises, entitled to full indemnity from former owner who was still in possession and whose employees created "trap" which actually caused injury); *American Employers' Ins. Co. v. Gulf States Utilities Co.*, 4 So.2d 628 (La. App. 1st Cir.1941) (seller of gas stove which exploded causing injury to victim and negligent installer liable to victim *in*

---

12. "As between the solidary debtors, each is liable only for his virile portion of the obligation." La.Civ.Code art. 2103. As Professor Johnson has pointed out, a finding of solidarity between the vicariously liable party (master) or financially responsible party (parent of minor)

and the alleged wrongdoer, "does *not* mean that contribution must necessarily be the rule between the obligors themselves." Johnson, *Developments in the Law, 1979–80: Obligations*, 41 La.L.Rev. 355, 358 (1981).

*solido* but seller entitled to indemnity from installer); *Bewley Furniture Co., Inc. v. Maryland Casualty Co.*, 285 So.2d 216 (La. 1973) (general contractor and sub-contractor who defectively designed and installed roof liable *in solido* to owner (victim) but negligent sub-contractor liable for indemnity to non-negligent general contractor).

Obviously, some co-debtors *in solido* to the victim are required to indemnify their co-debtors, a point recognized in article 2106. The repeated recognition of this doctrine by Louisiana's courts clearly refutes the bare statement that all debtors *in solido* are entitled to contribution. Indeed, in some instances the co-debtors *in solido* to the creditor (victim) have no right of either indemnity or contribution among themselves. For example, Louisiana's direct action statute, La.R.S. 22:655, authorizing direct actions by victims against liability insurers, provides in no uncertain terms that the action may be brought against, "both the assured and the insurance company, jointly and *in solido.*" Yet no liability insurance company has ever been so bold as to suggest that it was entitled to indemnity or contribution from its own insured, and Louisiana's courts would make short shrift of any such argument. Louisiana's courts would recognize that the articles of the Civil Code dealing with obligations *in solido* were written at a time prior to the development of the modern insurance industry, whereby virtually any risk can be underwritten for a price, and would further recognize that the insurance company, having been paid to assume the risk, has no call upon its "co-debtor *in solido,*" its insured, for any portion of the loss to the victim.

█ Aetna's claim of indemnification from MGIC is clearly without merit. Aetna alleges no contractural relationship with MGIC (or with its insureds), it cites no statute granting it a right of indemnification and it clearly does not qualify under Louisiana jurisprudence for the *Appalachian Corp., Inc. v. Brooklyn Cooperage Co., Inc.*, 151 La. 41, 44, 91 So. 539 (1922);

"active v. passive" indemnity. Indeed, it does not qualify under the master-servant or any similar indemnity situation. No relationship exists between Aetna and MGIC which would grant Aetna a right of indemnity from MGIC.

### B.

While some recent Louisiana solidary obligations decisions may rest upon unsteady conceptual underpinnings,[13] it is clear that the non-negligent master and his negligent employee are liable to the victim *in solido* under art. 2320. *Foster v. Hampton*, 381 So.2d 789 (La.1982); *Sampay v. Morton Salt Co.*, 395 So.2d 326 (La.1981). Surely the Louisiana courts, in finding master-servant solidary liability, do not intend to authorize contribution between negligent servant and non-negligent master, thereby overruling the many Louisiana cases which recognize the master's right of full indemnification from his negligent servant. See, e.g., *Williams v. City of Baton Rouge*, 200 So.2d 420 (La.App. 1st Cir.1967), amended and affirmed 252 La. 770, 214 So.2d 138 (1968). Perhaps in recognition of critical comment regarding some earlier decisions, the court in *Hoefly v. Government Employees Ins. Co.*, 418 So.2d 575 (La.1982), cautioned against reading any such conclusion regarding rights and responsibilities among co-debtors from a finding that they are liable *in solido* to the creditor (victim):

A full delineation of the relationship between the tort-feasor and the uninsured motorist carrier after payment of the debt owed by them solidarily is beyond the scope of this case. However, it is clear that the Civil Code recognizes that debtors, although solidarily bound for the creditor's benefit, may have differing relationships among themselves. The conclusion that debtors are solidarily bound does not alone determine the rights and obligations of the debtors in relationship to each other. 418 So.2d at 580.

---

**13.** See Comment, *Tilting Against Windmills: A* *Solidary Rejoinder*, 41 La.L.Rev. 1279 (1981).

The *Hoefly* court cited article 2103, which provides that as between solidary obligors, each is liable only for his virile portion of the obligation; article 2104, which provides that if one co-debtor *in solido* pays the whole debt, he can claim from the others no more than the part and portion of each; and article 2106, which provides that if the solidary obligation concerns only one of the co-debtors *in solido*, that one is liable for the whole debt toward the other co-debtors, who with regard to him, are considered only as his securities. The statement quoted above and references to those articles of the Civil Code clearly indicate that the court was concerning itself in *Hoefly* solely with the relationship between the victim (creditor) and the alleged co-debtors, not the relationship between the co-debtors themselves.

The preoccupation of Louisiana's courts with the protection of the victim should not be taken as an indication that Louisiana does, indeed, extend the right of contribution among all co-debtors who are held liable *in solido* to the victim.[14]

Aetna insists that because GADC and the officers and directors of the Bank are co-tortfeasors (solidary obligors), Aetna, as the insurer responsible for paying the damage caused by the acts of GADC, is entitled to claim contribution from the "co-tortfeasors" and their insurer MGIC. Although it is correct that under article 2324

co-tortfeasors are liable *in solido* to the victim, Aetna's claim of contribution requires careful analysis. First, note that it is GADC, not Aetna, which is the alleged co-tortfeasor. Aetna is neither a tort-feasor nor the insurer of a tort-feasor. Moreover, its policy is not a policy of liability insurance under the Louisiana direct action statute. Consequently, while the officers and directors might have had a claim for contribution against GADC, if the Bank had filed suit against them, it is by no means clear that the officers and directors could assert that claim against Aetna. On the contrary, Aetna would assuredly take the position that no direct action would lie against it and that only its insured, the Bank, has any right to sue under its policy. It is important to be aware that the Bank has not made any claim against either GADC or the officers and directors; consequently, we are not concerned with protecting the rights of the victim.

### C.

Aetna's bankers blanket bond more nearly resembles a policy of collision insurance or a policy of fire insurance than it does a liability policy. The policy is issued to the Bank for a stipulated premium and it underwrites certain stipulated risks and the only claimant possible under the terms of the policy is the Bank itself.

---

**14.** Prior Louisiana jurisprudence developed the doctrine of "perfect" and "imperfect" solidarity in an attempt to cope with the many and complex questions arising out of solidary obligations. *Gay & Co. v. Blanchard*, 32 La.Ann. 497 (1880), frequently cited as the source of the doctrine commented:

"Solidarity may be perfect or imperfect. It is perfect, and the obligors are the mandataries of each other, when by the same act, at the same time, they bind themselves to the performance of the same thing. It is imperfect (and they are not mandataries of each other) when they bind themselves to the same thing by different acts or at different times." 32 La.Ann. at 502.

In *Foster v. Hampton*, 381 So.2d 789 (La. 1980), the supreme court rejected the distinction between perfect and imperfect solidarity as "untenable." 381 So.2d at 791. Untenable as the doctrine of perfect and imperfect solidarity may

be, Louisiana courts must develop some doctrine to cope with the many ramifications of finding obligations *in solido* in favor of the victim. The provisions of article 2106 are not sufficient standing alone: "If the affair for which the debt has been contracted *in solido* concern only one of the co-obligors *in solido*, that one is liable for the whole debt towards the other codebtors, who, with regard to him, are considered only as his securities." If the supreme court continues to insist that all those who are bound to the creditor (victim) to pay all or part of the same loss are solidary obligors, without regard to when or how they became so bound, then serious trouble looms unless that solidary liability is limited to the creditor (victim), leaving the rights and responsibilities among the codebtors to be worked out upon some basis other than virile shares in all cases. See note 17, infra.

The collision insurer of a victim's vehicle is bound by contract to pay the victim for the repairs to the vehicle, and it is well-established that the collision insurer and the tort-feasor are *not* bound *in solido* to the victim. *Broadview Seafoods, Inc. v. Pierre*, 248 La. 533, 180 So.2d 694 (1965). A collision insurer which has paid the insured victim can assert only a claim under conventional subrogation, not contribution, against the tort-feasor. *See, St. Paul Fire & Marine Ins. Co. v. Standard Casualty & Surety Co.*, 3 So.2d 463 (La.App. 2d Cir.1941). Under this analysis of no solidary liability, Louisiana's courts have repeatedly held that payment to the victim by the collision carrier does not prevent the victim from recovering property damage from the tort-feasor, unless there has been a conventional subrogation. See, e.g., *Lagrue v. Murrhee*, 291 So.2d 844 (La.App. 4th Cir.1974), cert. denied 294 So.2d 829 (La.1974). In other words, payment by the collision carrier does not exonerate the tort-feasor's debt to the victim: more than one victim has recovered property damage from his own collision carrier and the same property damage from the tort-feasor. Louisiana's courts have simply not been willing to give the tort-feasor the benefit of insurance protection provided by the victim out of his own pocket. In fact evidence of payment by the collision carrier or by the victim's own medical insurance carrier has been frequently excluded under the "collateral source" rule. As the court commented in *Lagrue v. Murrhee, supra,* "Absent proof of a valid subrogation, defendants can not question the ... property damage

award." 291 So.2d at 848. Surely the supreme court in its recent solidarity cases did not intend to mandate a holding that payment to the victim under a collision policy obtained and paid for by the victim will exonerate the tort-feasor—or that the tort-feasor can claim contribution from the collision carrier.

The tort-feasor and the collision carrier are both bound to pay the victim the cost of repairing the vehicle.[15] If they are truly solidary obligors, does suit by the victim against his own collision insurance company interrupt prescription against the tort-feasor and vice versa?[16] If that is the case, then the supreme court must overrule cases such as *Lagrue v. Murrhee, supra,* and *State Farm Mutual Insurance Co. v. Cities Service Oil Co.*, 251 So.2d 201 (La. App. 3d Cir.1971). In the State Farm case an explosion at the Cities Service refinery caused damage to the victim's dwelling. State Farm had issued a fire policy covering the victim's dwelling but denied the claim. The victim sued State Farm, recovered judgment and State Farm paid. State Farm then turned upon Cities Service which pleaded the delictual prescription of one year. The plea was sustained. The court pointed out that State Farm's liability to its own insured was not vicarious or technical and that it had no independent claim for indemnity or contribution against Cities Service. State Farm's only claim was by virtue of a conventional subrogation from the insured (victim) and, since it did not institute suit until more than one year following the date of the accident, the claim had prescribed.[17]

---

15. In finding solidary obligations the supreme court has repeatedly relied upon the language of article 2091, "they are all obliged to the same thing." See, e.g., *Hoefly v. Government Employees Ins. Co.*, 418 So.2d 575 (La.1982). With great deference I suggest that a finding that the collision carrier and the tort-feasor are both obliged to pay for the damage to the victim's vehicle does not necessarily mean that they are obliged to the same *thing* as that word is used in article 2091. The liability is not really one debt or one thing; the differing obligations just happen to be in the same amount (or nearly so, considering deductible amounts). The same reasoning applies to the fire insurance carrier and the tort-feasor.

16. *Hoefly v. Government Employees Ins. Co.*, 418 So.2d 575 (La.1982) would seem to dictate this result. See note 9, supra. It should be noted that the victim ordinarily does not need an interruption of prescription against his own insurer because (except in the case of uninsured motorists coverage) the obligation is contractual subject to a ten year prescriptive period, La.Civ. Code art. 3544, not the one year delictual prescription.

17. If the recent jurisprudence dictates that the fire insurance carrier and the tort-feasor are solidary obligors in the true sense of "solidarity," then State Farm's claim against Cities Ser-

Here MGIC relies upon [18] cases such as *Aetna Life & Casualty Co. v. Dotson*, 346 So.2d 762 (La.App. 1st Cir.1977). In that case Aetna had issued a policy similar to that involved in this case which covered fraud or infidelity on the part of the employer's employees. The defendant was a bookkeeper who embezzled money from the insured employer over a period of time ending November 25, 1974. The fraud was discovered December 2, 1974. A claim was made against Aetna; Aetna paid the employer and became subrogated to the rights of the employer. Aetna filed suit December 12, 1975, more than one year following the discovery of the fraudulent activities. The defendant pleaded prescription which Aetna sought to avoid with arguments similar to those advanced by Aetna in this case. The court rejected those arguments, holding that the employer's action against the unfaithful employee prescribed in one year, and consequently the action of one subrogated to the employer's (victim's) rights also prescribed in one year.

Aetna seeks to avoid *Aetna Life & Casualty v. Dotson, supra,* by citing *Matt v. Cox,* 408 So.2d 389 (La.App. 1st Cir.1981), which relied upon *Blue Streak Enterprises, Inc. v. Gulf Coast Marine, Inc.,* 370 So.2d 633 (La.App. 4th Cir.1979). Aetna argues that these two later cases have impliedly overruled the *Dotson* case. In the *Blue Streak* case, the victim owned a marina and had secured insurance through the defendant, Gulf Coast, which was to expire July 24, 1976. In September 1975, the victim entered an agreement to sell, sale to be passed in January 1976. The

---

vice would not arise until the victim obtained judgment against State Farm, *Matt v. Cox,* 408 So.2d 389 (La.App. 1st Cir.1981), and the claim would not be prescribed. The solidary obligor sword cuts both ways. The unwary victim who sues only the tort-feasor is protected by a holding that the tort-feasor and the uninsured motorist carrier are solidary obligors and their suit against the tort-feasor interrupts prescription against the uninsured motorist carrier. The unwary victim loses, however, when he releases the tort-feasor without reserving his rights against the uninsured motorist carrier, as required by article 2203, which provides that discharge of one of the codebtors *in solido* discharges all the others, unless the creditor has made such a reservation. Cases such as *Decedue v. Government Employees Ins. Co.,* 441 So.2d 72 (La.App. 5th Cir.1983) demonstrate this double edge. There, the court of appeal, although disagreeing with the holding of *Hoefly v. Government Employees Ins. Co.,* 418 So.2d 575 (La.1982) considered itself bound by the holding that the uninsured motorist carrier and the tort-feasor are liable *in solido* to the victim; accordingly, the court held that when the victim settled with and released the tort-feasor without a reservation of rights against the uninsured motorist carrier, the victim also released the uninsured motorist carrier under article 2203. Thus the victim, who the supreme court is striving to protect, was left with no recourse against his own insurer under a policy paid for by the victim and designed to cover the very risk encountered by the victim—an underinsured tort-feasor who injured him. Only a specific ruling by that court would convince me that the supreme court intended that result. The court itself pointed out in *Hoefly* that those who are bound *in solido* to the victim "may have differ-

ing relationships among themselves." 418 So.2d at 580. Accordingly, Aetna can take no comfort from the *Decedue* case; Louisiana's courts will no doubt formulate a theory to sort out the relationships among co-obligors as a substitute for the untenable perfect-imperfect solidarity theory, see note 14, supra, because in order to fully protect the victim under all circumstances, they must do so.

18. MGIC also cites its own policy provisions in an attempt to avoid "solidary liability" and relies upon *Elgin National Bank v. Home Indemnity Co.,* 583 F.2d 1281 (5th Cir.1978), a Florida diversity case involving a banker's blanket bond and an officers and directors liability policy. The court there construed the provisions of both types of policy and concluded that they are mutually exclusive: the banker's blanket bond covers only "dishonest or fraudulent acts" and the liability insurance policy covers only negligent acts. That decision, while interesting, has no application here because the court was considering the activities of only one tort-feasor whose actions must necessarily have been classified as either fraudulent or negligent. Our situation involves two separate groups of alleged tort-feasors, the fraudulent activities of GADC and the negligent activities of the bank's officers and directors. It is alleged that their combined activities caused the loss to the Bank, and MGIC's policy provisions have nothing to do with the question of whether GADC and the officers and directors might be solidary obligors vis-à-vis the Bank. If the negligent activities of the officers and directors, either by themselves or combined with the activities of some other person, caused loss to the Bank, then the MGIC policy provides coverage for that loss.

actual sale was not passed until December 1976. At some point before expiration of the seller's (victim's) policy, the buyer informed his own insurance agency that he was the new owner and requested that a new policy be issued and at the same time told the defendant, Gulf Coast, that he had purchased the business and that no renewal policy should issue. Shortly after expiration of the policy, on July 31, 1976, a tornado caused extensive damage to the marina. The victim sued Gulf Coast and the buyer's insurance agency. Gulf Coast filed third-party demands against the seller's insurance agent, as well as the buyer's insurance agent, to which pleas of prescription were filed. The court held that prescription does not begin to run on claims for indemnity or contribution until the party seeking such is itself cast in judgment and denied the plea of prescription. Aetna's reliance upon this case is misplaced because the defendant, Gulf Coast, which was claiming indemnity or contribution, was itself alleged to be a negligent actor in the event causing the loss; that is to say, the plaintiff alleged that Gulf Coast was negligent in failing to issue a renewal policy; consequently, its negligence made Gulf Coast an actor, not simply an insurer of others. In *Matt v. Cox, supra,* the victim was injured when she stepped into a water meter hole. Suit was filed against an alleged owner and a water district under the theory that the water meter hole was in the possession and control of the water district. Subsequent amendments named others as owners of the property and eventually, more than one year after the accident, the water district filed a third-party demand against a trust which it alleged was the correct owner. Prescription was pleaded and the court held that prescription does not begin to run on claims for indemnity or contribution until the party seeking it is, itself, cast in judgment, citing the *Blue Streak* case. Again, the party making the claim of indemnity or contribution, the water district, was itself alleged to be a negligent actor and thus a co-tortfeasor and thus entitled to claim indemnity or contribution. The difference in that case and this is that Aetna is not an active tort-feasor and does not insure any active tort-feasor. Consequently, *Matt v. Cox* and the *Blue Streak* case have no application to the case before us.

## IV

 Whatever might be GADC's right to claim contribution from the officers and directors (and their liability insurer, MGIC) had the Bank sued GADC and even if Louisiana would hold that GADC, Aetna, the officers and directors and MGIC are solidary obligors *to the Bank* (victim), such "solidary liability" would not be the kind of *in solido* liability that would create a right in Aetna to claim either indemnity or contribution from the officers and directors. The fact of the matter is that GADC has *not* been sued and that GADC has *not* made any such claim and Aetna has no right to make that claim for GADC. As has already been pointed out, Aetna is not a tort-feasor and does not insure any tort-feasor (although under its contract with the Bank, it is responsible to the Bank for loss caused by GADC's fraud) and thus Aetna can acquire no rights from GADC. The Aetna bankers blanket bond is not a liability policy; it contains a provision requiring conventional subrogation of the Bank's claims against third parties, but, in the absence of a conventional subrogation, Aetna has no claim against the officers and directors (or their liability insurer). Aetna has not pleaded such subrogation—indeed, it denies that it is proceeding under subrogation—but should Aetna proceed under subrogation, it is apparent that this third-party demand, having been filed more than a year after the discovery of the loss, has prescribed. *See Aetna Life & Casualty Co. v. Dotson,* 346 So.2d 762 (La.App. 1st Cir.1977). Thus Aetna has no claim for indemnity and no claim for contribution from the officers and directors of the Bank (or from their insurer, MGIC). The only claim which Aetna could assert is one for conventional subrogation from the Bank which is prescribed.

Having made this difficult and perilous journey through the labyrinth of Louisiana's law of solidary obligations, I somewhat shakily but firmly conclude that there are no disputed issues of material fact and that MGIC is entitled to prevail as a matter of law. Accordingly, the motion for summary judgment filed on behalf of MGIC is hereby GRANTED and the third party action will be dismissed.