649 So.2d 642 (1994)
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Plaintiff/Appellant,
v.
Charles F. CAGLE, et al., Defendants/Appellees.
No. 94-322.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1994.
Writ Denied March 17, 1995.
*643 Joe Payne Williams, Robert Elton Arceneaux, Charles Rene Penot Jr., Mack E. Barham, Maureen O'Connor Sullivan, New Orleans, for Nat'l Union Fire Ins. Co. of Pittsburgh.
Carl W. Cleveland, New Orleans, Henry Cole Gahagan Jr., Natchitoches, David B. Means III, Mansfield, Mary Olive Pierson, Baton Rouge, Charles F. Cagle et al.
Bobby Stephen Gilliam, Penny D. Sellers, Shreveport, for Succession of Jess Loyd Jr.
Before DOUCET, PETERS and BERTRAND[*], JJ.
BERTRAND, Judge.
National Union Fire Insurance Company of Pittsburgh, Pennsylvania filed a petition to nullify a judgment rendered in favor of Charles F. Cagle[1], et al. (hereinafter referred *644 to as "the Cagles") and against the Succession of Jess Loyd, Jr. The Cagles were granted summary judgment in the nullity action, and the petition for nullity was dismissed. National Union appeals the decision of the trial court and assigns as error both the granting of summary judgment and certain pretrial discovery rulings made by the district judge. For the reasons which follow, we reverse the judgment rendered below and remand for trial on the merits.

FACTS
Jess Loyd, Sr. was vice president and supervisor of the agricultural lending department of the First National Bank of Shreveport. The Cagles were in the cattle ranching business and were customers of FNB since the 1970s. Loyd handled all of the Cagles' loans and financial transactions and oversaw all economic decision making in their cattle ranching operations. After more than thirty-five years at FNB, Loyd retired in 1986. Shortly after his retirement, FNB personnel approached the Cagles about their debt to the bank. The Cagles were apparently unaware of the enormity of their debts. They sought the assistance of counsel and eventually learned through investigation that Loyd's control of their businesses and financial transactions was in deviation of bank policies. In 1987, Loyd died from an apparent suicide.[2]
The record reveals that the Cagles initially asserted claims of fraud and personal profiteering against Loyd's succession in the underlying suit and in a federal RICO[3] action. They alleged that Loyd devised elaborate kickback schemes and participated in other fraudulent activities; some of these activities were described in detail in an affidavit filed in the RICO suit by one of the attorneys based on her investigation of Loyd's dealings. They asserted similar claims of fraud against FNB and others, and FNB sued its bond carriers based on the same allegations. Eventually, all claims were settled or otherwise disposed of except for the Cagles' suit against the succession in state court, which ultimately resulted in the judgment sought to be nullified by National Union. The succession was insured by National Union, which provided directors' and officers' liability and corporation reimbursement insurance policies to FNB. National Union's policies, however, specifically excluded coverage of any claims for loss caused by an FNB officer who has committed acts of fraud or personal profiteering. Accordingly, because of this exclusion, National Union took only a minimal interest in the litigation even though it was notified of the pending claims.
Prior to trial against the succession, the Cagles and the succession entered into an agreement whereby all parties agreed "to forebear [sic] in the collection of any judgment rendered against the Succession ... except to the extent that it may be reasonably ascertained that policies of insurance or indemnity are available and provide coverage therefore [sic]. The [Cagles] specifically reserve the right to assert claims against the Loyd Succession but only to the extent that it may be reasonably ascertained that policies of insurance or indemnity are available and provide coverage therefore [sic] to the Succession." National Union was not a party to this agreement and was not informed of its existence. National Union also was not a party to the litigation at this time.[4]
Also pursuant to the aforementioned agreement, the parties agreed to transfer the *645 litigation from Caddo Parish to Natchitoches Parish, a parish in which venue would not have been proper otherwise. The succession expressed its intention to minimize the "time, effort, money, inconvenience, and publicity associated with the defense of the claims," and agreed to provide relevant information to the Cagles at the Cagles' costs.
By 1991, the Cagles were ready to proceed to trial against the succession. In September, they filed amended petitions whereby all allegations of fraud, dishonesty, and personal profiteering were deleted. Instead, the plaintiffs asserted claims for breach of contract, duress, tortious interference with business relationships, breach of fiduciary relationships, and negligent misrepresentation. The succession forwarded the amended petitions to National Union's New York office along with other pleadings and without any notation of the substance of the amendments. When National Union did not respond by November, the succession sent the same mailing by certified mail, and then agreed to a trial date in December. Although National Union could have been named as a defendant regardless of its policy provisions (see footnote four), the Cagles chose not to name National Union as a party, and National Union did not intervene. The trial took place on December 16 and 17, 1991. Counsel for the succession filed an answer on the morning of trial and attended the proceedings.[5] However, apparently in keeping with the intentions stated in the forbearance agreement, the succession's counsel did not present any evidence, testimony, or argument, made no objections, and did not cross-examine any witnesses. At the conclusion of the trial, the judge ruled from the bench in favor of the Cagles on the negligent misrepresentation and duress claims, and awarded damages of over $14 million, plus interest, costs, expert fees, and attorneys fees.
Immediately upon receipt of the written judgment, the Cagles forwarded it to National Union and demanded full payment.
National Union then intervened in the suit and appealed the judgment. This Court affirmed the finding of negligent misrepresentation and the damage award based on the evidence in the record; writs to the Supreme Court were denied. See Cagle v. Succession of Loyd, 617 So.2d 592 (La.App. 3rd Cir.), writs denied, 620 So.2d 877 (La.1993). National Union also filed the nullity action which is the subject of this appeal. As of this writing, proceedings related to coverage are ongoing in federal court and are the subject of an exception of res judicata filed by the Cagles in the instant suit.
The procedural background of the nullity action is as follows: The Cagles answered the unserved petition for nullity on May 25, 1993. In July, National Union moved for a dismissal without prejudice[6], which was opposed by the Cagles and was ultimately denied by the trial judge. In August, discovery disputes arose involving interrogatories, requests for production of documents, and requests for admissions of fact. Both sides moved to quash certain depositions. The trial judge allowed National Union to take deposition testimony from the defendants on specific issues but not from other witnesses and not from any of the attorneys involved in the underlying litigation. The Cagles were allowed to depose certain National Union employees. On August 20, prior to the taking of any depositions, the Cagles moved for summary judgment and a hearing was scheduled for September 1. Pursuant to an order of the Supreme Court, the hearing was stayed.
The depositions of the Cagles took place in September over the course of three days as ordered by the trial judge. National Union had scheduled the depositions over three weeks, but the Cagles requested and were *646 granted an accelerated schedule. Consistently throughout the questioning, the Cagles' attorneys instructed them not to answer questions involving the forbearance agreement which they had signed, the trial which they had participated in, and the proof of damages which had been submitted in the underlying proceedings. National Union asked the court to intervene and order the deponents to respond to the questions posed; without ruling on each objection in each deposition, and without reading the entirety of the disputed questions,[7] the trial judge ruled in favor of the Cagles and National Union was not allowed to further question the witnesses. National Union then sought the court's permission to depose three of the attorneys who had participated in the prior proceedings, but that request was denied in a telephone conference. Later, in support of their motion for summary judgment, some of the attorneys for the Cagles submitted affidavits attesting to certain facts concerning the underlying proceedings.
On September 30, the Cagles' motion for summary judgment was heard in spite of National Union's request for a continuance. Ruling from the bench, the judge granted the motion assigning brief oral reasons. When the judge was asked to assign written reasons for purposes of appeal, he requested that the attorneys summarize the proceedings to refresh his memory. The judge then adopted verbatim the twenty-six page "proposed findings of fact and rulings of law" submitted by counsel for the Cagles.[8]
National Union now appeals the summary judgment and, in the event we remand for trial on the merits, asks this Court to reverse the discovery rulings discussed above. The Cagles have filed an exception of res judicata in this court, asserting that a judgment rendered in federal court in National Union's declaratory judgment action against the Cagles on the issue of coverage precludes further litigation of the issues raised in the instant proceeding.

SUMMARY JUDGMENT
La.C.C.P. Art. 966 provides that the party moving for summary judgment bears the burden of proving that there is no genuine issue as to material fact and that he is entitled to judgment as a matter of law. If the moving party is able to meet this burden, then La.C.C.P. Art. 967 requires the non-moving party to set forth specific facts showing that there is a genuine issue for trial.
In the recent case of Smith v. Our Lady of the Lake Hospital, 93-2512 (La. 7/5/94), 639 So.2d 730, the Supreme Court reviewed summary judgment principles and reiterated the rule that summary judgments are reviewed on appeal de novo. An appellate court asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Further, the court cited Penalber v. Blount, 550 So.2d 577 (La.1989) for the proposition that summary judgment is rarely appropriate for a determination of subjective facts.
With these principles in mind, we address the question of whether the Cagles are entitled to summary judgment in this nullity action.

NULLITY
National Union has asserted two grounds for nullity. First, under La.C.C.P. Art. 2004, National Union contends the Cagles obtained the $14 million judgment against the succession through fraud or ill practices. Second, National Union suggests the judgment is an absolute nullity under La.C.C.P. Art. 2002(3) because it was rendered by a court without subject matter jurisdiction. National Union contends that the forbearance agreement and *647 the actions of the succession's counsel at trial prove the parties were not actually adverse to one another, resulting in a feigned controversy which the trial judge should not have been asked to rule upon.

1. Article 2004
An action for nullity based on fraud or ill practices necessarily requires an examination of the factual circumstances giving rise to the judgment at issue. When those facts are in dispute, summary judgment is not warranted. In the instant case, National Union's burden of proof is twofold. It must prove both a deprivation of the legal right to appear and defend and a resulting unconscionability in the judgment rendered. The legal considerations involved in a nullity action are aptly described in a law review commentary entitled The Action of Nullity Under Louisiana Code of Civil Procedure Article 2004, 38 La.L.Rev. 806 (1978):
The action for nullity under Louisiana Code of Civil Procedure article 2004 serves to prevent injustices which cannot be corrected through new trials and appeals. Although a full categorization of the instances in which the remedy is proper would be impossible, the two requirements test aids the court in the exercise of its discretion. There must be a deprivation of the basic right of the adversarial system: the opportunity to appear and defend. The deprivation must also be unconscionable and inequitable. This consequence will normally follow from the first requirement unless the complaining party, through his own negligence and delay, has contributed to the harm which he now protests. However, complete absence of fault is not a requirement for relief, and neglect, if excusable, will not defeat an action for annulment if after a balancing of the equities, enforcement of the judgment appears unconscionable. Although public policy requires that opposing litigants accept primary responsibility for the protection of legal rights, occasionally the adversarial system proves inadequate because of factors which deprive a litigant of the opportunity to appear or which prevent a litigant from presenting defenses which may produce a different result. In these instances the prevention of injustice transcends the need for stability in judgments. (Footnotes omitted.)
38 La.L.Rev. at p. 823.
In Kem Search, Inc. v. Sheffield, 434 So.2d 1067 (La.1983), the Supreme Court described the type of actions which may be sufficient to constitute fraud or ill practice under Article 2004. The court declined to limit the law to cases of actual fraud or intentional wrongdoing, but instead held that it is "sufficiently broad to encompass all situations wherein a judgment is rendered through some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right." 434 So.2d at 1070. The default judgment in Kem Search was annulled because certain communications between the parties had reasonably led the defendant to believe that a default would not be taken against him. See also Foret v. Terrebone, Ltd., 631 So.2d 103 (La.App. 5th Cir.1994).
In the instant case, there is a factual question as to whether National Union was reasonably led to believe that fraud would be an issue in the underlying litigation. The original petitions alleged fraud on the part of Loyd. An affidavit was submitted in the RICO suit by one of the Cagles' attorneys which detailed specific evidence of Loyd's fraud and profiteering. Fraud was raised in all related suits involving the acts of Loyd. Whether National Union reasonably relied on the nature of this procedural history is disputed by the parties.
Also similar to the case before us is State v. Batchelor, 597 So.2d 1132 (La.App. 1st Cir.), writ denied, 604 So.2d 964 (La.1992), which involved an alleged manipulation of the judicial process. The mother and father of a two-year-old illegitimate child entered into a consent agreement whereby the father would pay a lump sum of $420,000 for the child's support. At the time the consent judgment was entered, the father had been charged with several violations of the Louisiana Drug Racketeering Act, La.R.S. 15:1351-1356, and was enjoined from alienating, encumbering, or concealing his assets. After the father's conviction, the State filed forfeiture proceedings against him and learned of *648 the consent judgment and the mother's previous seizure of assets. Hence, the State's right to forfeiture was curtailed. While the child support consent agreement and judgment were perfectly legal, the court examined the facts giving rise to the consent judgment and affirmed the finding that "the child support proceeding was intended to thwart the interests of the State's forfeiture proceedings." 597 So.2d at 1135. Thus, the State prevailed in its nullity action and the child support award was nullified.
The factual question before the trial court herein as raised by National Union is whether the Cagles' actions in their proceedings against the succession constitute a manipulation of the judicial process sufficient to be considered an ill practice, and if so, whether enforcement of the judgment would be unconscionable. First, the question of deprivation of a legal right must be considered. National Union contends that it was deprived of the rights to appear at the trial, present evidence, assert defenses, and prove fraud on the part of Jess Loyd, Sr. Because of its absence at the trial, National Union asserts that the issue of the Cagle's comparative fault was not addressed, prescription was not raised, damages may have been inflated, and most important, the question of Loyd's fraud, which was the basis of all other related actions asserted by the Cagles and others, and was specifically attested to by one of the Cagles' attorneys, was not even mentioned.
National Union contends that it was deprived of its rights by the Cagles' and the succession's failure to provide adequate notice of the proceedings. There is no dispute that notice was sent to National Union, but there is vehement argument as to whether the notice was misleading. The Cagles contend the notice sent by the succession, the insured, was all that was required under the terms of the policy. On the other hand, National Union argues that several factors about the notice render it misleading, such as the failure to include the impending trial date and to inform the recipient of the forbearance agreement and the succession's intention not to defend the suit. Further, the amended pleadings were sent to National Union, but they were included in a large packet of other pleadings and all original petitions, and there was no information in the enclosure letter as to the substance of the amendments. In other words, National Union suggests the substance of the amendments was hidden in the volume of documents which purported to be proper notice.
Before the fact finder can determine whether an ill practice has taken place, the second consideration which must be addressed is whether enforcement of the judgment would be unconscionable. This factor requires a review of National Union's actions in failing to intervene in the suit or otherwise protect its own interests. See Kem Search, supra. National Union's neglect or laches in investigating this matter must be weighed against the harm resulting from the actions of the Cagles and the succession. See Homer National Bank v. Nix, 566 So.2d 1071 (La.App. 2d Cir.), writ denied, 569 So.2d 985 (La.1990). Furthermore, the validity of the judgment on its own merits may also be considered by the fact finder. See State v. Batchelor, supra.
Given the factual disputes evident in the record before us, we conclude the trial judge erred in granting summary judgment on the issue of fraud or ill practices. National Union has asked for a jury trial of its nullity action. Accordingly, the jury is the fact finder which will determine if National Union has proved fraud or ill practices on the part of the Cagles and the succession. This determination will necessarily be based on subjective facts such as intent, motive, and good faith, facts which the parties dispute and which must be resolved after trial on the merits.

2. Article 2002(3)
National Union contends the judgment rendered in the underlying litigation is absolutely null because the district court had no subject matter jurisdiction and thus no authority over the parties and the case presented. This assertion is based on the argument that the forbearance agreement entered into by the succession and the Cagles "plainly ended any adversarial relationship" between them as evidenced by the conduct of the succession at the trial of the underlying *649 proceeding. National Union also contends the trial court may have been misled about the true nature of the controversy by the parties' failure to inform the judge of the forbearance agreement.
The Cagles contend the judge was informed of the agreement in a pretrial conference; however, the trial judge could not remember if he was informed or not. The Cagles further argue that the agreement did not resolve issues of liability, damages, and causation, but merely set a limit upon recoverable damages once liability and damages were adjudicated. They cite numerous cases in which limitation of liability agreements have been upheld and enforced and have not mooted a dispute between adverse parties.
It is true that the succession was relieved of financial liability by virtue of the forbearance agreement, and therefore, the succession did not actively defend the claims asserted by the Cagles. While the forbearance agreement did not include a settlement as that term is traditionally used, it did define and limit the financial exposure of the succession and resolve certain procedural matters.
The issue raised by National Union is both interesting and uncommon. We have reviewed the applicable jurisprudence cited by the parties, including the 1850 case of Lord v. Veazie, 8 How. 251, 49 U.S. 251, 12 L.Ed. 1067 (1850), which is most similar to the facts presented herein, excepting one important point. In the Lord case, Mr. Moor, the interested third party, was unaware of the existence of the proceedings which would ultimately affect his rights. In the instant case, National Union was aware of the proceedings between the succession and the Cagles, although it may have been unaware of the nature of the proceedings, and the fact that Loyd's fraud would not be litigated, due to the alleged ill practice of the Cagles and the succession.
National Union knew of the pendency of the proceedings. National Union did not know that the proceedings would be characterized in such a way so as to jeopardize its interests. National Union was also unaware of the trial date. The parties dispute the reason for National Union's lack of knowledge; either it was due to ill practice on the part of the litigants or neglect on the part of National Union. If National Union failed to intervene in the suit because of its own neglect, and fraud was not litigated as a result of that neglect, then we cannot find the proceeding to have been "in contempt of the court and highly reprehensible," as did Justice Taney in the Lord case.
Because of this fundamental factual dispute concerning the judgment at issue, we do not believe the record before us supports the conclusion that the judgment is an absolute nullity under La.C.C.P. Art. 2002(3). This determination must be made after trial on the merits.

DISCOVERY
In this appeal, National Union contends the trial judge erred in hearing the Cagles' motion for summary judgment prior to the completion of discovery. National Union also assigns as error the trial court's refusal to order the Cagles to respond to certain deposition questions. Finally, National Union contests the denial of its request to depose one of the Cagles' several attorneys, two of the attorneys representing the succession, and certain witnesses who may have had knowledge of the underlying litigation.
La.C.C.P. Art. 967 provides for discovery pending a motion for summary judgment at the trial court's discretion. The Supreme Court has held that there is no absolute right to discovery prior to a hearing on a motion for summary judgment; however, the law does require that the litigants be given a fair opportunity to present their claim. Simoneaux v. E.I. du Pont de Nemours, 483 So.2d 908 (La.1986). Generally, the appellate courts look at the attempts made by the parties to complete discovery and the risk of harm or injustice to the party opposing the motion for summary judgment. Armstead v. Schwegmann Giant Super Markets, 618 So.2d 1140 (La.App. 4th Cir.), writ denied, 629 So.2d 347 (La.1993); Borne v. New Orleans Health Care, Inc., 580 So.2d 1070 (La. App. 4th Cir.), writ denied, 586 So.2d 533 (La.1991).
In the instant case, less than six weeks elapsed between the filing of the motion for *650 summary judgment and the hearing. During that time, all discovery took place; the parties exchanged interrogatories and requests for production, all of which gave rise to numerous objections. Approximately twenty depositions were taken, and most of the deponents were from out of state. Both the Cagles and National Union filed voluminous exhibits and lengthy memoranda in support of and in opposition to the motion for summary judgment. There was no unfinished discovery pending at the time of the hearing. However, the trial judge did not allow National Union to depose several non-party witnesses and certain counsel for the Cagles and the succession. Further, the trial judge upheld the Cagles' refusal to answer certain deposition questions as instructed by their counsel. Because we have already determined that summary judgment was improperly granted in this case, we must now determine if the trial judge's rulings on these discovery disputes were correct.
National Union was allowed to depose the Cagles as they were named defendants in the nullity action. However, during the taking of testimony, the Cagles' attorneys instructed them not to answer any questions about the forbearance agreement, the trial against the succession, and the evidence submitted therein. National Union contends this testimony may have been material to the issue of fraud or ill practices, and, even if relevant information was not forthcoming, instructing a witness not to answer is improper. National Union's position is correct.
La.C.C.P. Art. 1443B states that in a discovery deposition, "[e]vidence objected to shall be taken subject to the objections." La.C.C.P. Art. 1444 allows a party or the deponent to move to have the deposition terminated, and that motion may be granted "upon a showing that the examination is being conducted in bad faith or in such manner as unreasonably to annoy, embarrass, or oppress the deponent or party." There is nothing in the law which would allow the termination of a deposition or the refusal to respond to questions to be based merely upon the belief by counsel or the judge that the deponent is unable to answer the questions posed.[9] See MTU of North America, Inc. v. Raven Marine, Inc., 475 So.2d 1063 (La. 1985). In fact, La.C.C.P. Art. 1455 provides that objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by the failure to make them before or during the taking of the deposition.
In his ruling, the trial judge failed to consider La.C.C.P. Arts. 1443 and 1444 and order the depositions to continue.[10] The trial judge erred in ruling that the Cagles did not have to respond to certain deposition questions that did not seek privileged information, and we will allow National Union to retake those depositions. If the Cagles or their counsel find certain questions objectionable, the objections will be recorded and the testimony will be taken subject to the objections. Only if the Cagles are able to show bad faith or unreasonableness on the part of National Union entitling them to a protective order under La.C.C.P. Art. 1444 should the depositions be terminated or limited in any way. See Brasseaux v. Girouard, 214 So.2d 401 (La.App. 3rd Cir.), writ refused, 253 La. 60, 216 So.2d 307 (1968).
We turn now to the question of attorney depositions. In an effort to uncover evidence concerning the underlying trial and any agreements between the Cagles and the succession, National Union moved to depose two attorneys employed by the succession *651 and one attorney employed by the Cagles. The Cagles opposed the motion, but in spite of their contention that they could not be witnesses in these proceedings, four of the Cagles' attorneys and one of the succession's attorneys filed affidavits in support of the motion for summary judgment. National Union asked for a contradictory hearing on its motion, but the request was denied. However, the following week, a telephone status conference took place, and the trial judge denied National Union's request to depose the attorneys. The trial judge then relied on the attorneys' affidavit testimony in granting the summary judgment. After reviewing the transcript of the status conference, we conclude that no true contradictory hearing was conducted, as required by La. C.C.P. Art. 1452. No evidence was presented for our consideration and no testimony was taken.
In denying National Union's request to depose the attorneys, the trial judge stated that National Union admitted its purpose was to delay the proceedings by forcing the removal of counsel. First, we have reviewed the transcript of the status conference and find no such admission by National Union. Second, the removal of counsel based on counsel's role as a witness in the proceedings is not a hard and fast rule, but rather, is governed by various considerations as addressed in La.C.E. Art. 508 and Rule 3.7 of the Rules of Professional Conduct. See Brasseaux, supra. Finally, by submitting affidavits to the court, the attorneys acknowledged their role as witnesses to various facts unknown to National Union and relevant to the issues raised on summary judgment. Given these considerations, we find error in the trial judge's refusal to allow the requested depositions without a contradictory hearing. On remand, the court is instructed to allow National Union to present evidence of extraordinary circumstances which may be sufficient to warrant the taking of the requested depositions.
Finally, concerning the quashed depositions of non-party witnesses, including persons who testified in the underlying trial and corporate representatives of FNB and its insurer, USF & G, we conclude that the trial judge erred in denying National Union the opportunity to discover potentially relevant information and order that National Union be allowed to take these depositions.

RES JUDICATA
The Cagles have filed in this court an exception of res judicata based on a judgment rendered by a federal court in a related action brought by National Union against the Cagles and the succession. The federal court judgment and the record upon which it is based are not a part of the record before us. Accordingly, pursuant to La.C.C.P. Art. 2163, we cannot decide the issues raised in the exception.
National Union requests that we simply decline to consider the exception for lack of evidence, relying on a strict reading of La. C.C.P. Art. 2163. Instead, we will follow the procedure adopted by the Second Circuit in Stansell v. Stansell, 622 So.2d 1203 (La.App. 2d Cir.1993), and instruct the trial court to consider the merits of the exception upon remand of this case. Evidence should be presented concerning the federal court proceedings, including those matters specifically reserved for adjudication in state court. We refer the court to the recent case of McClendon v. State of Louisiana, DOTD, No. 94-0111 (La. 3/18/94), 634 So.2d 844, for guidance in determining the proper statutory law applicable to this dispute. We do not believe Article 2163 precludes remand for consideration of the exception of res judicata.

DECREE
For the foregoing reasons, the summary judgment in favor of the Cagles dismissing the claims of National Union is hereby reversed. This matter is remanded for completion of discovery in accordance with the views expressed herein, for resolution of the exception of res judicata, and, if necessary, trial on the merits. Costs of this appeal are assessed to the Cagles.
REVERSED AND REMANDED.
NOTES
[*] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] The defendants named in this nullity action include Charles F. Cagle, Inez Cagle, Benton Johnson, Jack Methvin, Sam Methvin, Carolyn Methvin, Nancy Methvin, The Methvin Partnership, Dwight Young, Gloria Hawkins Young, McCauley M. James, Elise Pierson James, James Lehane Cole, Alice Phillips Cole, James Lehane Cole, Jr., John Bailey Cole, Tina Lehane Cole, and the James L. Cole and Sons Partnership, all of whom were plaintiffs in the underlying proceeding, as well as the Succession of Jess Loyd, Jr., through its duly appointed Co-Administrators, Dale O. Williams and Dr. Edward Keith Loyd, defendant in the underlying proceeding.
[2] The facts of the underlying case are stated in more detail in Cagle v. Succession of Loyd, 617 So.2d 592 (La.App. 3rd Cir.), writs denied, 620 So.2d 877 (La.1993).
[3] Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.A. § 1962.
[4] Although the Direct Action Statute, La.R.S. 22:655, entitled the Cagles to name National Union as a defendant in their suit against the Succession of Loyd as the insured of National Union, the Cagles contend that they declined to do so because the policies at issue specifically forbade such an action. In Quinlan v. Liberty Bank & Trust Co., 575 So.2d 336 (La.1991), the Supreme Court determined that the Direct Action Statute overrides such a policy provision. See also Black v. First City Bank, No. 94-C-0423, September 6, 1994, 642 So.2d 151 (La.1994).
[5] By agreeing to the trial date, the succession presumably waived its rights under La.C.C.P. Art. 1571, which provision prohibits the setting of a trial date before an answer has been filed.
[6] National Union originally filed its nullity action in federal court. To cover its bases, National Union also filed the same claim in state court but withheld service of the petition. National Union states that it moved for a dismissal without prejudice of the state suit because it intended to litigate the nullity claim in federal court but was hindered from doing so by various motions filed by the Cagles which delayed the federal proceedings.
[7] National Union submitted all of the depositions to the court for its review and made a chart of all questions which were not answered by the deponents. Concerning these materials, the trial judge stated, "I'm not going to tell you I've read every page of it, but I've read enough of it to see what you're getting at."
[8] During this litigation, on several occasions, the trial judge requested that the parties prepare the various judgments of the court based on rulings rendered in open court. While this may be efficient and practical in certain instances, in this case, the prevailing party was allowed to compose reasons for judgment and routinely embellish the court's decisions.
[9] At the hearing of National Union's motion to compel deposition responses, the trial judge made the following remarks: "Well, do you think that ... my question was do you think she would have had any idea.... `Mrs. Cagle, specifically what were you informed as to what National Union's position was in any of this?' Did you really think that she could answer that? Let's go on to the next one. `Mrs. Cagle, specifically what were you told as to why National Union would be notified?' Do you think that Mrs. Cagle and Mrs. Young and all those wives of these farmers were actually involved in that?"
[10] The trial judge ruled as follows: "The Court finds that there was good cause to instruct the witnesses not to answer these questions, that some of them were irrelevant, some of them were repetitive and argumentative, some were... called for interpretation of legal documents, some called for conclusions on the law, some were based clearly on a false predicate."